## LEE WAY MOTOR FREIGHT, Inc., et al. v. KEYSTONE FREIGHT LINES, Inc.

### No. 2398.

Circuit Court of Appeals, Tenth Circuit.

March 18, 1942.

See, also, Keystone Freight Lines v. Pratt Thomas Truck Line, D.C., 37 F.Supp. 635.

Hugh F. Owens and George F. Short, both of Oklahoma City, Okl. (Leonard E.

Roach, Ralph H. Schaller, M. M. Gibbens, and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl., and R. M. Mountcastle, of Muskogee, Okl., were with them on the brief), for appellants.

J. B. Dudley, of Oklahoma City, Okl. (Dudley, Hyde, Duvall & Dudley, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

The question presented is whether the final decree entered in this cause contravenes the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C.A. §§ 101–115.

Plaintiff instituted the action against a large number of defendants, grouped in the complaint and denominated as motor carrier defendants, freight forwarding defendants, and cartage defendants. During the trial the action was dismissed without prejudice as against the second and third groups and therefore no further reference will be made to them. Plaintiff is engaged in business as a common carrier of property for hire by motor vehicle in interstate commerce under the Motor Carrier Act, as amended, 49 U.S.C.A. §§ 301–327, also in intrastate commerce in Oklahoma. In the conduct of such business, it operates terminal facilities at Tulsa, Oklahoma City, and elsewhere on its routes, and it maintains pickup and delivery service at such terminals. Defendants are engaged in the same kind of business in Oklahoma. Plaintiff and defendants became parties to regularly established tariffs fixing through routes and joint rates over their lines as connecting and interlining carriers, and they regularly interlined and exchanged freight originating on their respective routes, destined for points beyond their respective routes on the lines of other carriers. Defendants have labor contracts at Tulsa, Oklahoma City, and Muskogee with the local unions of International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, affiliated with the American Federation of Labor, in each of which it is provided in substance that the employer would not request or instruct any employee to handle freight to or from a company declared unfair to such union, or to go through a picket line of a striking union. The local unions at Tulsa and Oklahoma City declared plaintiff to be unfair and established picket lines around its respective docks there, notified defendants of such action, advised defendants that in consequence their employees would no longer handle freight moving to or from the lines of plaintiff, and further that if such employees were required to handle such freight they would be called out on strike. Solely on account of such notice, defendants stopped transporting or handling shipments moving to or from the lines of plaintiff.

The purposes of the suit were to restrain the continuation of the terminated relationship and to compel defendants to resume their former relations with plaintiff. A temporary restraining order was entered, without notice; a preliminary injunction followed; and later, finding and concluding that on account of such action on the part of the defendants, plaintiff had suffered irreparable damage and loss, that if such acts were permitted to continue plaintiff would in the future suffer further irreparable loss for which it had no adequate remedy at law, and that the provisions in the contracts between the defendants and their employees with respect to the handling of freight to or from a company declared to be unfair and to the crossing of a picket line did not justify the defendants in terminating their relations with plaintiff and did not relieve the defendants from performing their duties as common carriers in interstate commerce under the Motor Carrier Act, as amended, under the rules and regulations of the Interstate Commerce Commission, and under the common law, the court entered a so-called permanent injunction decree which in mandatory terms required the defendants to resume and continue in due course to interline and interchange freight with plaintiff as connecting carriers. Defendants appealed.

Section 1 of the Norris-LaGuardia Act, supra, provides that no court of the United States, as therein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of a labor dispute, except in strict accordance with the provisions of the act. Section 4 provides that no such court shall have jurisdiction to issue any such order or injunction to prohibit any person or persons participating or interested in such a dispute from doing singly or in concert certain enumerated acts. Section 7 pro-

vides that no such court shall have jurisdiction to issue any such order or injunction, except after hearing the witnesses in open court, and except after findings of fact that unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, and in such instance the restraining order or injunction shall be limited to the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying it; that substantial and irreparable injury to the property of complainant will follow; that as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting thereof; that complainant has no adequate remedy at law; and that the public officers charged with the duty to protect the property of complainant are unable or unwilling to furnish adequate protection, but that a temporary restraining order may be issued in certain circumstances. Section 8 provides that no restraining order or injunctive relief shall be granted unless the complainant has complied with every obligation imposed upon him by law, and unless he has made every reasonable effort to settle such dispute either by negotiation or with the aid of any governmental machinery of mediation or voluntary arbitration. And section 13(a) (c) provides:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined). * * *

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

■ The power of Congress to define and limit in that manner the jurisdiction of a district court in respect to the issuance of a restraining order or a temporary or permanent injunction in a case involving or growing out of a labor dispute is settled beyond doubt. Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012.

■ The act does not concern itself with the background or the motives of a strike. Neither is it confined to controversies between an employer and his employees. It is broader in scope. Lauf v. E. G. Shinner & Co., supra; New Negro Alliance v. Sanitary Grocery Co., supra.

■ Here a labor dispute arose between plaintiff and the local unions. Pickets were established around its docks. Defendants had existing contracts with the unions which provided that their employees should not be required to handle freight moving to or from an employer declared to be unfair, and that such employees should not be required to cross the picket line of a striking union. Pursuant to such contractual provision, the unions gave defendants notice of the declaration of unfairness and of the establishment of the pickets, and advised defendants that in the event the employees were required to handle freight moving to or from plaintiff they would be called out on strike. Disturbance of the relationship between defendants and their employees was threatened. A strike of such employees with the resulting injury to the businesses of defendants was in the immediate offing. It could be avoided only by settlement of the controversy between plaintiff and the unions, or by defendants terminating their traffic relations with plaintiff. The labor dispute originating between plaintiff and the unions thus projected itself into the relationship between defendants and their employees. Clearly the subject matter of plaintiff's action involved and grew out of a labor dispute, within the intent and mean-

ing of the act. Cf. Lauf v. E. G. Shinner & Co., supra; New Negro Alliance v. Sanitary Grocery Co., supra.

The Motor Carrier Act, supra, places upon a common carrier of freight in interstate commerce certain duties and responsibilities toward the public, and ordinarily such duties and responsibilities are paramount to private rights. But whatever other remedies may or may not be available, there is nothing in the exactions of the Motor Carrier Act which operates to enlarge beyond the limitations of the Norris-LaGuardia Act the jurisdiction of a United States Court in respect to the issuance of a restraining order or a temporary or permanent injunction in a controversy involving or growing out of a labor dispute.

The judgment is reversed and the cause remanded with direction to dismiss the action.