**BAKERY SALES DRIVERS LOCAL UNION NO. 33 et al. v. WAGSHAL.**

**No. 9121.**

United States Court of Appeals
District of Columbia.

Decided April 28, 1947.

EDGERTON, Associate Justice, dissenting.

———◆———

Mr. Herbert S. Thatcher, of Washington, D. C., with whom Mr. Joseph A. Padway and Miss Jacqueline Wemple, both of Washington, D. C., were on the brief, for appellants.

Mr. William E. Leahy, of Washington, D. C., with whom Mr. Philip Wagshal and Mr. Nicholas J. Chase, both of Washington, D. C., were on the brief, for appellee.

Before EDGERTON, CLARK and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

Technically, this cause is before us on an appeal from an order of the District Court overruling appellants' Motion to Dismiss and an order of the District Court granting an injunction pendente lite against appellants. Appellants' petition for allowance of a special appeal from the same orders, filed subsequent to the filing of the Notice of Appeal of right, was denied by this Court at the October term, 1945. Appellee moved to dismiss the appeal on the ground that neither order is a final order appealable to this Court. Appellants answered this motion to dismiss by alleging that the cause involved a "labor dispute" and was appealable as a matter of statutory right under the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115. This Court at the April term, 1946, ordered that the case be placed on the summary docket and set for argument on the single question as to whether the case involves a labor dispute under the terms of the Norris-LaGuardia Act. That, therefore, is the only question now to be considered by this Court.

This litigation arises out of these facts. Appellee here, plaintiff below, is the owner and operator of a delicatessen. Appellants, defendants below, are a local union organization of bakery drivers, as well as the

Union's business agent. Appellee had been for a number of years the purchaser of a considerable quantity of bakery products from Hinkle's Bakery, delivered by a Union driver, who, it is undisputed, was an employee of Hinkle and not of appellee. For some time prior to July 5, 1945, the Union driver had been making deliveries to appellee at the noon hour.

This schedule was unsatisfactory to appellee because a luncheon business was operated in conjunction with the delicatessen and at this hour it was inconvenient, if not impossible, for appellee to check the bakery delivery with the driver. Appellee requested delivery at a later hour. Thereafter, Hinkle's Bakery advised appellee that the driver would make no further deliveries to her establishment and that the bakery could make and furnish appellee with no more bakery supplies. Appellee then turned to other sources for supplies and secured another connection on terms mutually agreeable to both parties.

It is undisputed that throughout the relationship between Hinkle and appellee, appellee had been consistently in the habit of paying all accounts directly to Hinkle.

On July 26, 1945, business agent Andre, representing the Union, appeared at appellee's place of business and stated that $150 was due and owing to the bakery driver who had refused further deliveries. Demand for immediate payment was made. Appellee's manager countered with the claim that he did not owe the driver anything since his practice had always been to pay directly to the bakery.

On this visit the Union representative demanded that payment be made to the driver, and also told appellee that he should immediately stop selling a certain non-Union made item that he observed in appellee's establishment. The latter portion of the demand was complied with by appellee and the sale of the non-Union item was discontinued. Appellee's manager was told that if he did not comply with all of these demands the drivers' Union would stop all shipments of bakery, milk and dairy products coming to his store from any source, even by Railway Express from outside the District of Columbia. Shortly thereafter appellee made payment, by check, to the bakery, conformable to her contractual relationship with the bakery and as had always been her practice. The check was returned by the Union representative with a letter which stated that it could not be accepted in settlement because "it was $12.22 short of the amount which is owned (sic) to our member, Leon Wolf."

On July 27, 1945, the New Philadelphia bakery which had been delivering bakery products to appellee, notified appellee that no more deliveries could be made inasmuch as appellant Union had threatened to pull out all of its drivers if any products of any sort were sold or delivered to appellee.

Some time late in July 1945, the drivers' Union set up a boycott against appellee which was successful in keeping appellee from purchasing bread either from bakers or retail stores in Washington or surrounding territory, even to the extent of a single loaf of bread. In addition to the boycott, aimed at shutting off the necessary food supplies, appellee's business was picketed by defendant Andre personally and by others and it was generally stated by the Union that appellee was involved in a "labor dispute" with the Union.

In addition to the undoubtedly effective boycott as to bakery products, plaintiff's complaint alleged (and it must be taken to be admitted by the defendants' motion to dismiss) that the defendants had also threatened to prohibit in like manner all deliveries and sales of milk and dairy products to be made to plaintiff, which, if not enjoined, would compel plaintiff to discontinue business to her irreparable damage.

On these essential facts appellee brought a complaint in the lower court asking that the Union be restrained pendente lite and permanently from boycotting and interfering with her business, and from publishing false statements. In addition to the injunctive relief requested, damages in the amount of $50,000 were asked, along with an equal amount of punitive damages. After hearing extensive argument and considering affidavits, the trial court overruled appellants' motion to dismiss and granted appellee's petition for an injunction pending trial.

382

Under this court's order, as noted supra, the single question before us now is: Does the complaint show the existence of a "labor dispute" as the term is defined in the Norris-LaGuardia Act.[1]

If the question is to be answered in the affirmative, it seems clear that the temporary injunction was erroneously granted, for the standards prescribed by Section 7 and 9 of the Act as necessary to the issuance of injunctive relief were not met.[2]

In our opinion the facts of the instant case are so different from those in the two leading cases in this court cited and relied upon by appellants, as to take the case clearly outside those decisions.[3] In those cases exacting consideration was given to the underlying principles which support the Norris-LaGuardia Act, and we are not disposed to modify or repudiate the policy fundamentals expressed in those opinions. We are here concerned with the specific problem of determining whether the trial court was correct in its judgment that on the facts before it no "labor dispute" within the terms of the Act, and the decisions under it, was made out.

In the first place appellants appear to urge that the mere fact that the complaint was directed toward a union, by a commercial concern which admittedly had some contact but no contractual relations with union members, is sufficient to subject the controversy to the interdiction of the Act. This argument, we think, goes substantially beyond the points decided, and the interpretations established in precedent cases. It is an unwarranted advance from the terms of the statute and the judicial interpretations stating that the proximate relationship of employer and employee need not exist in order that there be shown a labor dispute within the meaning of the law. See Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012. If we were to accept appellants' argument on this point we would be providing a basis whereby even the most remote and

---

[1] 29 U.S.C.A. § 101.

[2] Section 7 reads in pertinent part: "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in sections 1–15 of this title, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings or fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."

Section 9 provides: "No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided in sections 1–15 of this title. Mar. 23, 1932, c. 90, § 9, 47 Stat. 72."

[3] Green v. Obergfell, 73 App.D.C. 298, 300, 121 F.2d 46, 138 A.L.R. 258, certiorari denied 314 U.S. 637, 62 S.Ct. 72, 86 L.Ed. 511; Fur Workers Union, Local No. 72 v. Fur Workers Union No. 21238, 70 App.D.C. 122, 105 F.2d 1, affirmed 308 U.S. 522, 60 S.Ct. 292, 84 L.Ed. 443.

casual association with a union employee, which resulted in disagreement, would be classed a "labor dispute". The protection of labor in its broad programs of organization, and in its specific efforts to advance the individual and collective well being of its membership does not require that we open the way, through interpretative expansion of the concept of "labor dispute", to unbridled attacks upon commercial interests which may by chance or misadventure brush a union or a union member. As appears from the decided cases, the courts have been most liberal in holding that wherever the facts show a bona fide labor controversy, founded upon genuine issues involving the protection of labor in pursuing its legitimate objectives, the Norris-LaGuardia Act is an effective bar to injunctive relief . . . even where the employer may in effect be an innocent bystander. It does not follow from this that, where the facts do not support the assertion that there is in fact a dispute, the union should have the benefit of the doubt, as against the interest in protecting the rights of private property owners whose business may be jeopardized by labor's antagonism.

The Norris-LaGuardia Act was passed to correct certain great abuses by management in the use of the injunctive process during the earlier struggles of the trades unions to gain economic and social rights for their membership. It was obviously intended by Congress to be a highly remedial Act and as such is to be liberally construed by the courts. And, indeed, it has been construed with the most extreme liberality to such a degree that it might be said with some justice that there have been extensions of the purposes of the Act not by legislative enactment but by judicial legislation. Be that as it may, no court so far as we are advised or have been able to find has ever gone so far in extending and defining the Act as to apply it to a situation where the business agent of a union, having no contractual relations whatever with the proprietor of any business, takes it upon himself to act as the volunteer collection agent for a third party and attempts by threats, picketing and boycott to ruin a legitimate business over a difference of $12.20 between original parties to a transaction to which the business agent was an intruder and which should have been determined in the Small Claims Branch of the Municipal Court. To maintain that such gratuitous interference on the part of defendant Andre constitutes a "labor dispute" within the careful definitions of the Norris-LaGuardia Act is ridiculous.

As in all cases where two readily acceptable basic policies collide, it is the court's function to weigh and balance the conflicting interests.[4] Here we have the interests of labor under its protective shield of the anti-injunction legislation to measure against the interests and rights of the appellee. Viewing the problem in the light of facts before the trial court, we think the result which was reached is correct.

Turning to the specific items alleged as constituting a labor dispute we find that the first relied upon is the matter of delivery hours. The appellee admittedly objected to taking delivery at the time the particular driver involved desired or, because of route restrictions, had to make delivery. The question here is whether this amounts to a controversy concerning the "hours of employment". Here appellee asked for a more favorable delivery time, but when told that this driver could not or would not make delivery at any other time, the matter was dropped, and appellee turned to another bakery (also served by union drivers) for supplies. From this situation we fail to perceive how a "dispute" may be said to exist. It cannot create a dispute for a tradesman to accede to the demands of the adversary, and to attempt to conduct a business notwithstanding disadvantages may be suffered by the tradesman.

As for the alleged controversy regarding the money due to the driver, it does not anywhere appear that there was any obligation running from appellee to the driver or to the union. The purchases of bakery

---

4 See particularly Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S. Ct. 1533, 89 L.Ed. 1939, where Labor's protective legislation was held not to shield the union from the provisions of the Sherman Act.

products were made from the bakery, and payment was sent to the bakery. So far as appellee was concerned any payment to the driver was a matter between the bakery and the driver, as its employee. This arrangement cannot, in our judgment, be tortured into a dispute as to "wages".

To suggest, as appellants do in their brief, that an employee of an independent contractor (The Hinkle Bakery occupied no relationship to appellee save that of seller and buyer) who, for reasons of his own, refused to continue delivery on behalf of his own employer and induced the employer (Hinkle) to discontinue sales is "a striker", and further to suggest that for appellee to attempt to obtain his bakery supplies from other independent sellers is to replace a striker with another laborer, is reductio ad absurdum.

Equally untenable is the theory that because defendant Andre is the business agent of a union and chooses to turn himself into a volunteer collection agent for the Hinkle Bakery he thereby creates a labor dispute within the meaning of the Norris-LaGuardia Act.

There is the further item concerning the non-union product found in appellee's establishment by the union agent. As to this it appears from affidavits in the record that upon receiving the demand to discontinue selling this non-union item, it was eliminated from the products offered for sale by appellee. Appellant contends that appellee cannot rely upon the affidavits in question because the Act proscribes their use. We think the appellee's response to the contention represents the correct view. The question for determination was a preliminary one to be decided in terms of the trial court's general equitable jurisdiction. To determine whether that jurisdiction existed in the face of the Norris-LaGuardia Act, the court properly took into account the affidavits before it.

There being, in our opinion, no bona fide "labor dispute", we do not think that in the present situation the terms of the injunction require modification.[5]

Appeal dismissed.

[5] Cf. the underlying fact situation in Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736, 84 L.Ed. 1093.

EDGERTON, Associate Justice (dissenting).

It seems to me clear that this is a "case involving or growing out of a labor dispute." The Norris-LaGuardia Act forbids injunctions in such cases unless specified requirements are met. These requirements include (1) a complaint under oath; (2) testimony taken in open court; and (3) "findings of fact by the court, to the effect— (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained * * *; (b) That substantial and irreparable injury to complainant's property will follow; (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; (d) That complainant has no adequate remedy at law; and (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection." [1] In this case the complaint was not under oath, no testimony was taken in open court, and no facts were found. It is not even contended that the facts required by the Act existed.

The court states that appellee "requested" delivery at a later hour. Appellee's complaint states that the driver was "required" to deliver at a later hour. Appellee would not take delivery at the old hour and the driver would not make delivery at a new hour. Since the Act makes it immaterial "whether or not the disputants stand in the proximate relation of employer and employee," this dispute concerning the time when the driver's work should be done was as plainly a labor dispute as if it had concerned the introduction of a night shift in a factory. Afterwards a dispute arose over appellee's alleged sale of non-union goods. This also was a familiar type of labor dispute. It is immaterial whether the dispute over the driver's money claim was or was not a labor dispute. One labor dispute brings the Norris-LaGuardia Act into operation. Here there were at least two.

[1] 47 Stat. 71, § 7, 29 U.S.C.A. § 107. Cf. footnote 2 of the opinion of the court.

Since the boycotting, picketing and other conduct of which appellee complains grew out of these disputes, this is a "case involving or growing out of a labor dispute."

The court takes the somewhat paradoxical position that the disputes regarding working hours and non-union goods were not labor disputes. Its theory is that there is no labor dispute unless the court thinks the interests the defendants seek to promote are "legitimate" and are more important, on balance, than the conflicting interests of the plaintiffs. The court identifies the statutory term "labor dispute" with the court's concept of a "bona fide labor controversy, founded upon genuine issues involving the protection of labor in pursuing its legitimate objectives." But the Act says nothing about the legitimacy of objectives or the balancing of conflicting interests. The Supreme Court has overruled this court's theory in these words: "To say, as the Circuit Court of Appeals did, that the conflict here is not a good faith labor issue, and that therefore there is no 'labor dispute', is to ignore the statutory definition of the term * * *." [2] That definition is: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."[3] The rights and wrongs of the disputes and of the conduct growing out of them, as to which I express no opinion,[4] have nothing to do with the question whether this is a "case involving or growing out of a labor dispute."

The court's ruling comes to this, that the Act has no application to labor activity which a court thinks illegal or improper. But the Act has no practical application to anything else, for courts have never enjoined labor activity which they thought legal and proper. Therefore the court's ruling not only conflicts with the Act but nullifies it. The Act was passed for the very purpose of preventing courts, except in the extraordinary circumstances specified in the Act, from issuing injunctions against labor activity which they thought illegal or improper. There is no finding and no contention that those extraordinary circumstances were present here.

The court holds also, in effect, that to replace a striker with another worker is to "accede to the demands" of the striker,[5] ends any dispute, and prevents further activity on his behalf from growing out of a dispute.

[2] Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Products, Inc., 311 U.S. 91, 99, 61 S.Ct. 122, 126, 85 L.Ed. 63.

[3] 47 Stat. 73, § 13(c), 29 U.S.C.A. § 113(c).

[4] Except that the peaceful picketing which the District Court enjoined was within appellants' rights under the Constitution. Thornhill v. Alabama, 310 U. S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Bakery and Pastry Drivers and Helpers Local 802 v. Wohl, 315 U.S. 769, 62 S. Ct. 816, 86 L.Ed. 1178.

[5] It may be that the driver was not technically a striker, since he did not stop working for his immediate employer Hinkle's Bakery. But he is in the same position as a striker for the purposes of the Act and of this case, since the Act makes it immaterial "whether or not the disputants stand in the proximate relation of employer and employee."