## EAST TEXAS MOTOR FREIGHT LINES v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, STABLEMEN & HELPERS, LOCAL UNION NO. 568, et al.

### No. 11919.

Circuit Court of Appeals, Fifth Circuit.

July 9, 1947.

Rehearing Denied Sept. 12, 1947.

Carl B. Callaway, of Dallas, Tex., and E. Wayles Browne and Frank J. Looney, both of Shreveport, La., for appellant.

David Previant, of Milwaukee, Wis., Aubrey B. Hirsch, of Baton Rouge, La., and Wm. M. Guice, Edward S. Klein and Robert L. Garrett, all of Shreveport, La., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was brought by plaintiff, a common carrier by motor and as such an employer of labor, against a labor union and motor carriers with which plaintiff interline freight, upon allegations [1] that the case was not one "involving or growing out of a labor dispute" within the meaning of the

---

[1] As plaintiff alleged its case:

The defendant, Local Union #568 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, "for no lawful purpose and solely for the unlawful purpose of injuring the plaintiff, began a series of unlawful acts by which they have brought about and caused to be maintained an unlawful boycott of plaintiff's business of reconsigning freight through, and accepting freight shipments from, motor carriers".

The conspiracy thus formed constitutes restraint of trade in violation of the Sherman Act, Title 15, Sec. 1, U. S.C.A.

Neither the Brotherhood nor the Local Union has in any way become or been designated as the bargaining agent of plaintiff's employees, but they are continuing to foment and carry on the following unlawful acts in violation of the Sherman Anti-Trust Act, (a) they have conspired with the owners to establish, and have established, a boycott; (b) they are attempting to persuade employees of plaintiff to violate employment contracts with it; and (c) by said conduct and threats they prevent plaintiff from carrying out its agreements with the other motor carriers.

All of said acts and things done by defendants constitute a conspiracy not only in restraint of trade to injure plaintiff, but a violation of the duty of the carrier defendants under the acts of Congress to interline freight with plaintiff.

act[2] of March 23, 1932, limiting the jurisdiction of federal courts "in matters affecting employer and employee". It is another in the long list of unsuccessful efforts[3] to obtain an injunction against a labor union without complying with the greatly restrictive provisions of the act. It is not a case, therefore, in which the district judge or we are at all concerned with whether an injunction could have issued against the acts complained of if the Norris-LaGuardia Act had been faithfully complied with.

The defendant carriers answered,[4] denying that they had conspired with the union or with each other.

The defendant unions answered,[5] denying that they had conspired with anyone and alleging there was a labor dispute in progress and that what they had done was in pursuit of their lawful purpose to unionize plaintiff's employees.

On the hearing on plaintiff's prayer for a temporary injunction it clearly appeared that the carriers had not acted in conspiracy either with the union or with each other but each, as pleaded by it, had separately acceded to the demands of the union because, and only because, they wished to avoid labor troubles with it.

It further appeared: that for some time the union had been trying to organize plaintiff's employees and had been unable to do so; that some of plaintiff's employees had joined it; that at one time certification proceedings had been brought before, and a charge of unfair labor practices had been filed with, the National Labor Relations Board, but nothing had come of them; and the union had instituted the boycott[6] in order to bring sufficient pressure upon plaintiff and its employees to force the latter to join the union.

---

[2] Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C.A. §§ 101–115.

[3] Lauf v. Shinner & Co., Inc., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Groc. Co., Inc., 303 U.S. 552, 58 S.Ct. 703, 82 L. Ed. 1012; Fur Workers Union Local 72 v. Fur Workers Union #21238, 308 U.S. 522, 60 S.Ct. 292, 84 L.Ed. 443; Lake Valley Farm Products, Inc., v. Milk Wagon Drivers Union Local No. 753, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Taxi-Cab Drivers Local Union No. 889 v. Yellow Cab Operating Co., 10 Cir., 123 F.2d 262.

[4] The carrier defendants, admitting that they had refused to accept freight from plaintiff and would continue to refuse, but denying that they had conspired either with the union or with the other carriers to do so, alleged that they took the action they did upon the demand of the union with which they had contracts and as an act of simple ordinary prudence.

[5] The union defendants insisting that the case arose out of a labor dispute and denying that they had conspired with anyone to affect plaintiff's business, alleged that because of the unfair conduct of plaintiff they had informed the defendant carriers that they would deem the handling of freight of plaintiff a violation of the terms of their contracts with the defendants and this would necessitate a work stoppage, picketing, or any other legal means to compel the defendant carriers to cease handling the unfair freight of plaintiff. Denying that

a conspiracy existed between them and the carriers, they alleged that they had acted independently in the protection of their rights as a labor union, and that their acts did not constitute restraint of trade. Insisting that there was a labor dispute going on between them and plaintiff, and plaintiff's employees, and that their members had a right to refuse to load or unload trucks driven by employees of plaintiff who had refused to join their union, they say that the only reason that the other carriers have refused to haul plaintiff's freight is because of the union's demand in pursuit of the lawful purpose involved in the labor dispute, in the course of which these defendants were undertaking first to persuade, and then to compel, the plaintiff's employees to join their union.

[6] In the Record, on page 174, appears this colloquy:

"The Court: What was the grievance of the local union? Is it merely an individual assumption that the East Texas Company was unfair in its practice to its labor?

"Mr. Previant: It goes further, Your Honor. Out of the mouth of Mr. Eubank he stated that Mr. Odel Smith called him and told him that the union was going to organize in their system, and we could rest on that and that would be a perfectly legitimate labor objective to endeavor to organize all of the employees of the East Texas Company, and certainly our organization has a right—

"The Court: (Interrupting) And you could make use of this means as a pur-

Upon these facts, the district judge concluded that the case was one involving, or arising out of, a labor dispute, and denied the injunction.

 Appellant is here insisting that the injunction was wrongly denied, first because it did not involve a labor dispute, and second because even if it did, since what was being done was in violation of another congressional act, the Motor Carriers' Act, 49 U.S.C.A. § 301 et seq., plaintiff was entitled to an injunction to restrain that violation.

We cannot agree with appellant. Without at all giving our approval to the acts of the defendants sought to be enjoined or taking issue with appellant's claim that the acts of the defendants were illegal and might thave been enjoined in a state court suit,[7] we are in no doubt that the case is wholly unlike those dealt with in Allen Bradley Co. v. Union, 325 U.S. 707, 65 S. Ct. 433, 89 L.Ed. 570, or Philadelphia Rec. Co. v. Manufacturing Photo-Engravers Ass'n, 3 Cir., 155 F.2d 799; and is one arising out of a labor dispute. Neither are we in any doubt that since it is one so arising, plaintiff, not having complied, or attempted to comply, with the Norris-LaGuardia Act is in effect seeking to enlarge the jurisdiction of the federal courts as limited by that act by its claim that the court should issue the injunction because the acts complained of are violations of duties or obligations arising under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. Lee Way Motor Freight, Inc. v. Keystone Freight Lines, 10 Cir., 126 F.2d 931, a case directly in point, so decides, and we are in no doubt that it was well decided. The order appealed from is affirmed.

pose for the accomplishment of that objective. °

"Mr. Previant: Yes, sir. Certainly. It would make us secure in our right that a non-union truck driver as to loading and unloading freight could be stopped by a union man, and an injunction could require him to stop the company; and that, when non-union employees, when confronted with this type of situation, would realize that their best interests lie in joining up with this organization rather than fighting it. *Insofar as making a request upon the employer is concerned, we are supposed* to be *inhibited from doing so because we are not a certified representative; but we do have a right to make a request of the employees and to make it difficult for a non-union employee to make a livelihood, as compared to a union member; and this is one of the means we may use.*" (Italics supplied.)

[7] Rogers v. Poteet, Mo.Sup., 199 S. W.2d 378, certiorari denied 67 S.Ct. 1732.

Cf. Section 101, Sec. 8(b) (4), 29 U. S.C.A. § 158(b) (4). Section 303(a), Labor Management Relations Bill, 1947, 29 U.S.C.A. § 187(a).