BAKERY SALES DRIVERS LOCAL UNION NO. 33 ET AL. *v.* WAGSHAL, TRADING AS WAGSHAL'S DELICATESSEN.

No. 225.   Argued December 17–18, 1947.—Decided March 15, 1948.

*Herbert S. Thatcher* argued the cause for petitioners. With him on the brief were *J. Albert Woll* and *Jacqueline Wemple.*

*William E. Leahy* argued the cause for respondent. With him on the brief were *William J. Hughes, Jr.* and *Nicholas J. Chase.*

Mr. Justice Frankfurter delivered the opinion of the Court.

This is an action brought in a United States District Court to enjoin interference with a business, and the question is whether the complaint subjects that court to the limitations imposed by the Norris-LaGuardia Act upon its equity jurisdiction.

This is the substance of the complaint. Respondent owns a delicatessen store which sells food and serves meals. She obtained bread for the delicatessen store from Hinkle's bakery. Deliveries were made by a driver, an employee of Hinkle and a member of Local Union No. 33, one of the petitioners. The driver delivered the bread at noon, which inconvenienced the respondent, since the checking of deliveries at that hour interfered with the serving of lunches. Respondent "required" the driver to bring the bread at another hour. Shortly thereafter, Hinkle informed the respondent that it would no longer furnish her with bakery products. And so, respondent made arrangements with another bakery, which delivered at a more convenient hour.

Three weeks later, the petitioner Andre, president of the union, visited the delicatessen store and stated that the respondent owed the driver approximately $150 and requested immediate payment. Respondent replied that she had never had dealings with the driver, but had paid Hinkle directly by check, and would pay the bill in due course. Andre replied that the payment would have to be made to the driver in full; furthermore, that if the respondent did not cease carrying a certain non-union article of food he noticed on display, delivery of bread, milk, and other products necessary to the respondent's business would be cut off. Shortly thereafter the respondent sent a check to Hinkle for the balance of her bill. It was returned by the union, with a letter signed by Andre asserting that the payment was owed to its

member, the driver, and could not be accepted. The following day, the bakery which had been serving respondent after Hinkle had stopped doing so, ceased to deal with her, explaining that the union had threatened otherwise "to pull out all its drivers." Through an effective boycott, the union kept the respondent from obtaining bread from other bakeries or retail stores. The delicatessen store was also picketed.

The complaint prayed for temporary and permanent injunctions against the boycott and other interference with respondent's business, the payment of damages, and the usual catch-all relief. Petitioners moved to dismiss the action on the ground that the controversy as set forth in the complaint involved a "labor dispute" under the Norris-LaGuardia Act, 47 Stat. 70, 29 U. S. C. §§ 101 *et seq.* Respondent filed an "answer to motion to dismiss," attached to which were affidavits, including one of Benjamin Wagshal, manager of the delicatessen store, elaborating the´ incidents narrated in the complaint. Among other matters set forth, he stated that payment for bread purchased from Hinkle had always been made by check sent directly to Hinkle and was never made to a driver, and that neither the union nor any of its drivers had ever previously questioned this practice; that Andre had asserted by mail and at the delicatessen store that the check which the respondent had sent to Hinkle was $12.22 short of the amount owed; and that the non-union item on sale to which Andre had objected was not a subject of controversy but merely an excuse for Andre's attempt, on his visit to the delicatessen store, to enforce his demands concerning the bill, and that in any event its sale had been discontinued.

The District Court granted an injunction *pendente lite,* restraining the petitioners from interfering with respondent's business or preventing sale and delivery of bakery products to the respondent, by boycott and picket-

ing.   At the same time, it denied the petitioners' motion to dismiss.   Petitioners filed a notice of appeal to the Court of Appeals for the District of Columbia, and respondents moved to dismiss the appeal.

If this case does not involve a "labor dispute" under the Norris-LaGuardia Act, an appeal as of right could not be had in the Court of Appeals for the District of Columbia.   31 Stat. 1189, 1225, as amended, D. C. Code (1940) § 17–101.   However, § 10 of the Norris-La-Guardia Act, 47 Stat. 70, 72, 29 U. S. C. § 110, provides for immediate review of an order granting or denying "any temporary injunction in a case involving or growing out of a labor dispute . . . ." [1]   The Court of Ap-

---

[1] Section 13 of the Norris-LaGuardia Act, 47 Stat. 70, 73, 29 U. S. C. § 113, reads as follows:

"SEC. 13. When used in this Act, and for the purposes of this Act—(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or

peals, one justice dissenting, held that this was not such a case, and dismissed the appeal. 161 F. 2d 380. Because of asserted conflict between this decision and prior decisions of this Court on the scope of "labor dispute" within the meaning of the Norris-LaGuardia Act, we granted certiorari. 332 U. S. 756.

A preliminary claim must be met, that the case has become moot. The short answer to the argument that the Labor Management Relations Act of 1947, 61 Stat. 136, 149, § 10 (h), has removed the limitations of the Norris-LaGuardia Act upon the power to issue injunctions against what are known as secondary boycotts, is that the law has been changed only where an injunction is sought by the National Labor Relations Board, not where proceedings are instituted by a private party. The claim of mootness is also based on an affidavit stating that after dismissal of the appeal by the Court of Appeals, the union lifted its boycott. Since the record does not show that a stay of the injunction was granted pending action in this Court, we must assume that the union's action was merely obedience to the judgment now here for review. We therefore turn to the merits.

The petitioners attach significance to three incidents for their claim that a "labor dispute" is here involved.

1. The controversy over the hour of delivery. The petitioners claim that this was a dispute "concerning terms or conditions of [the driver's] employment,"

representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

"(d) The term 'court of the United States' means any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress, including the courts of the District of Columbia."

thereby raising a labor dispute, "whether or not the disputants stand in the proximate relation of employer and employee." § 13 (c) of the Norris-LaGuardia Act. But the respondent had nothing to do with the working conditions of Hinkle's employees, individually or collectively. Her only desire was to have the bread come at an hour suitable for her business, and she had no interest in what arrangements Hinkle made to satisfy that desire rather than run the risk of losing her trade—to have the bread delivered by the same driver at a different hour, or by another driver, by an independent contractor, or through some other resourceful contrivance. To hold that under such circumstances a failure of two businessmen to come to terms created a labor dispute merely because what one of them sought might have affected the work of a particular employee of the other, would be to turn almost every controversy between sellers and buyers over price, quantity, quality, delivery, payment, credit, or any other business transaction into a "labor dispute." Cf. *Columbia River Packers Assn.* v. *Hinton,* 315 U. S. 143. Furthermore, on the basis of what we have before us, respondent's disagreement with Hinkle over the delivery hour was a dead controversy, not involved in the subsequent dispute with the union, or in the boycott against which the injunction was directed.

2. The controversy over the bill. The petitioners regard both the question whether payment was to be made to the driver rather than to Hinkle, and the disagreement over the disputed sum of $12.22, as a matter concerning the driver's wages, and therefore a condition of his employment. But, on the allegations now here, respondent had nothing to do with the payment of the driver's wages. The delicatessen store was Hinkle's customer. On the basis of the allegations to be considered, the driver would receive his pay whether or not respond-

ent paid her bill. It is immaterial that the driver may have been the conduit for payment—as drivers who deliver packages normally are. The same is true as to the disputed item of $12.22. The mere fact that it is a labor union representative rather than a bill collector who, with or without the creditor's consent, seeks to obtain payment of an obligation, does not transmute a business controversy into a Norris-LaGuardia "labor dispute." Cf. *Dorchy* v. *Kansas*, 272 U. S. 306, 311.

3. The non-union item on sale in the delicatessen store. Sale by a merchant of non-union commodities is, no doubt, a traditional source of labor disputes within the scope of the Norris-LaGuardia Act. While the complaint itself did not indicate the history of this matter after Andre's visit, the affidavit attached to the "answer to motion to dismiss" sets forth that it was not a bona fide bone of contention, but a mere pretext, and, further, that the respondent thereafter withdrew the item from sale. While the conclusion of the incident giving rise to a controversy may not necessarily terminate a labor dispute (cf. *Hunt* v. *Crumboch*, 325 U. S. 821), what is before us leaves no doubt that the subsequent boycott was addressed only to the question of payment of the bill. Petitioners suggest that since no injunction may issue in a case growing out of a labor dispute, except upon oral testimony, determination whether there is a labor dispute should not rest on affidavits. But in this case the affidavits were merely a gloss on the complaint and as such constituted an informal amendment. They serve here as allegations, not proof.

This case was decided on a motion to dismiss. All that was determined was that on the basis of the respondent's claims, which the petitioners chose not to controvert, the Norris-LaGuardia Act did not apply. Since the only issue before the court below, and therefore before us, was the appealability of the order for an injunction *pendente*

*lite,* which in turn depended on the applicability of the Norris-LaGuardia Act, other questions raised are not now open here.

*Affirmed.*

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE MURPHY dissent. MR. JUSTICE RUTLEDGE took no part in the consideration or decision of this case.