AMALGAMATED ASS'N OF STREET, ELECTRIC RY. & MOTOR COACH EMPLOYEES OF AMERICA et al. (NATIONAL LABOR RELATIONS BOARD, Intervener) v. DIXIE MOTOR COACH CORPORATION.

No. 13716.

United States Court of Appeals Eighth Circuit.

Nov. 26, 1948.

Bernard Cushman, of Washington, D. C., Stein & Stein, of El Dorado, Ark., and Bert B. Larey, of Texarkana, Ark. (Hans J. Lehmann and O. David Zimring, both of Chicago, Ill., on the brief), for appellants.

Mozart G. Ratner, Principal Attorney, National Labor Relations Board, of Washington, D. C. (A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel and Arnold Ordman, Attorney N.L.R.B., all of Washington, D. C., on the brief), for intervener, Labor Board.

Ned Stewart, of Texarkana, Ark., and Frank C. Biggs, of Dallas, Tex. (Biggs & Roberts, of Dallas, Tex., and Shaver, Stewart & Jones, of Texarkana, Tex., on the brief), for appellee.

Before GARDNER, Chief Judge, WOODROUGH and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought in the federal district court by the Dixie Motor Coach Corporation (referred to as Dixie) as plaintiff, against the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, a labor organization (referred to as Amalgamated), and named individual members thereof as defendants, to obtain an injunction against the establishment and maintenance by defendants of a picket line about a bus depot

operated by Dixie in Texarkana, Arkansas, and from in any way interfering with Dixie's operations of the bus terminal. It was alleged in the complaint that the Amalgamated had notified plaintiff that it intended to establish a picket line around plaintiff's bus terminal at Texarkana, Arkansas, unless the plaintiff would cease doing business with the Southern Bus Lines, Inc., a motor common carrier which used the bus terminal and facilities of the plaintiff pursuant to contract between the bus companies; that the employees of plaintiff are not represented by plaintiff nor claimed to be, but have other representation for collective bargaining purposes through whom contracts have been made and there is no labor dispute between plaintiff and its employees; that the employees of plaintiff are satisfied, but if defendants should establish a picket line about said terminal as threatened, plaintiff's employees concertedly would refuse to cross it and this would result in closing the bus terminal and in irreparable damage to plaintiff; that the controversy presented is one between plaintiff, who is a motor carrier of passengers and their baggage, express and mail in interstate and foreign commerce, and the defendant labor organization and its members, agents, servants and employees, and that the court had jurisdiction under the provisions of the Labor Management Relations Act, 1947, popularly known as the Taft-Hartley Act; and that the acts threatened by defendants, if carried out, would constitute a violation of Section 303(a) of said Act, 29 U.S.C.A. § 141 et seq. That there was no labor dispute prior to the threat made by defendants to establish said picket line around said bus terminal and that there is no labor dispute at the present time. Plaintiff prayed for a temporary and, after trial, a permanent injunction against the threatened picketing and any other interference with its operations. In their answer, the defendants asserted that the court was without jurisdiction to issue any injunction in the case which was described as involving or growing out of a labor dispute. It was alleged that Division 1127 of Amalgamated, of which the individual defendants were members, was involved in a labor dispute over working conditions and wages with Southern Bus Lines, Inc.; that Southern used plaintiff's bus terminal as a place of doing its business; that defendants intended to picket the plaintiff's bus terminal not against plaintiff or anyone except the Southern Bus Lines, Inc., and that the signs they will carry will state that Southern Bus Lines, Inc., is unfair and that Division No. 1127 of the Amalgamated is on strike. That said signs will not cause confusion and anyone reading them will know that said picketing is against the Southern Bus Lines, Inc., and not against plaintiff, and that defendants had the right, under the Fourteenth Amendment, to so publicize their dispute with Southern. They denied that their intended picketing would involve violation of Section 303(a) of the Labor Management Relations Act, 1947, or that the court was authorized by said provisions to issue an injunction against them, and alleged that those provisions of said Act merely authorize an action for damages for unfair labor acts after the same have been found to be unfair by the National Labor Relations Board. They prayed that injunction be denied and the action dismissed.

After trial the court filed its opinion and entered findings of facts and conclusions of law and a decree of permanent injunction against defendants as prayed by plaintiff. This appeal is taken by the Amalgamated and the individual defendants to reverse the decree of injunction.

After the appeal had been lodged here the National Labor Relations Board, which Congress has charged with functions of administration of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., said Act as amended, and the Labor Management Relations Act of 1947, filed its motion under Rule 18 of the Rules of this court for leave to intervene. It alleged that acts enjoined by the court below as violative of Section 303(a) of the Labor Management Relations Act of 1947, 61 Stat. 136, 29 U.S. C.A. § 141 et seq., are, if violative of that Section, also declared by Section 8(b) (4) of the National Labor Relations Act as amended to be unfair labor practices, subject to the primary jurisdiction of the National Labor Relations Board; that Section 303 empowered the court below merely to

award damages for its violation and not to issue an injunction, either temporary or permanent, at the instance of private persons such as plaintiff; and that aside from the power vested in the federal district courts by said Section 303 to award damages at the suit of a private party, the Board has exclusive jurisdiction to remedy such violations by cease-and-desist orders, and to petition the federal district courts for such injunctive relief as is necessary and proper pending final decision of the Board with respect to the matters involved. This court granted the Board's motion, and it has filed a brief in support of its contentions and participated in the oral argument.

The findings of facts, conclusions of law and opinion of the trial court are fully reported (D.C., 74 F.Supp. 952) and no issue is taken with the findings for the purposes of the appeal where they are strictly fact findings (except as it is asserted that some facts of record are inadequately covered).

The specific findings made by the court show that it found the material allegations of the plaintiff's complaint to be sustained by the proof, and the court concluded as a matter of law that the case presented, wherein defendants asserted and plaintiff denied the right to picket the Dixie terminal in order to stop Southern's business being carried on there, was not a case which involved or grew out of a labor dispute within the meaning and scope of the Norris LaGuardia Act, 29 U.S.C.A. §§ 101–115, and that under the provisions of Section 303(a) of the Labor Management Relations Act of 1947, and by virtue of its inherent powers as a court of equity, it was authorized to issue the injunction at the instance of plaintiff, as prayed for, and that its power was not limited by the requirements of the Norris LaGuardia Act. There was no claim, and the court did not conclude that a case for injunction was made out if the provisions of the Norris LaGuardia Act limiting the power of the federal courts to issue injunctions in cases involving or growing out of labor disputes are applicable to the present case. In view of the publication of the report in the Federal Supplement we refer to the report to avoid needless repetition here.

On this appeal the controlling question for our decision is whether the federal district court was vested with jurisdiction to enjoin at the instance of the private party plaintiff, the threatened acts and conduct of secondary boycotting alleged and found by the court to constitute violations of Section 303(a) of the Labor Management Relations Act of 1947. The contentions for reversal which we deem conclusive are in substance:

1. That this case as disclosed by the pleadings and the evidence and the facts found by the court, is a case which involves and grows out of a labor dispute within the meaning and scope of the Norris LaGuardia Act, 29 U.S.C.A. § 101–115, and the court was in error in concluding that it was not such a case and in awarding injunction against the threatened peaceful picketing in disregard of the limitations upon its powers imposed by the Norris LaGuardia Act, as amended, and contrary to the provisions of that Act as amended. That Congress has vested exclusively in the National Labor Relations Board the power to seek injunctive relief in courts against acts or conduct constituting unfair labor practices within the meaning of the National Labor Relations Act as amended.

2. That Section 303 of the Labor Management Relations Act of 1947 creates in private persons only the right to seek damages in the federal district courts for violations of that section, and the designation in the section of acts therein described as "unlawful, for the purposes of this section only" was not intended to authorize granting of injunctive relief by the federal courts at the suit of private parties and there was no inherent power in the court below to enter the decree of injunction sued for.

### Opinion.

We think it fair to the district court to observe that it had heard and granted injunction in this case in December, 1947, before the decision by the Supreme Court of Bakery Sales Drivers Local Union No. 33, etc., v. Wagshal, on March 15, 1948, 333 U.S. 437, 68 S.Ct. 630, 632. In that case the same matters which are elaborated by counsel here with scholarly and painstaking

thoroughness, are passed on by the Supreme Court with short answer and brief dispositive statements. But it is none the less clear from a reading of the Supreme Court's opinion that there was before the court and it considered and answered the question that confronts us as the controlling question for our decision here. It was there asserted i. a. that the labor union was picketing Wagshal to force Wagshal to cease selling a non union product, which conduct is covered by the provisions of Section 303(a) of the Labor Management Relations Act of 1947, and also by Section 8(b) (4) of the National Labor Relations Act as amended and is referred to by the court as "Secondary boycott", and in the resistance to the issuance of an injunction sought in the federal district court by Wagshal it was claimed that the case involved a labor dispute within the scope of the Norris LaGuardia Act forbidding the issuance of injunction. It was argued in the Supreme Court that the Labor Management Relations Act of 1947 had removed those limitations of the Norris LaGuardia Act as to issuance of injunction in such an action. The Supreme Court said, "The short answer to the argument that the Labor Management Relations Act of 1947, P.L. 101, 80th Cong., 1st Sess., § 10(h) [61 Stat. 136, 149, § 10(h)], 29 U.S.C.A. § 160(h), has removed the limitations of the Norris-LaGuardia Act upon the power to issue injunctions against what are know as secondary boycotts, is that the law has been changed only where an injunction is sought by the National Labor Relations Board, not where proceedings are instituted by a private party." On the question whether Wagshal's suit to enjoin union picketing claimed to be carried on to prevent Wagshal's selling non union goods involved and grew out of a labor dispute within the scope of the Norris LaGuardia Act, the court answered with the same directness and brevity, that there was no doubt that such selling by a merchant of non union commodities "is * * * a traditional source of labor disputes within the scope of the Norris-LaGuardia Act."

In this case the showing is that the plaintiff Dixie Bus Company at its bus depot in Texarkana was selling the tickets on which Southern transports its passengers, was furnishing depot facilities, announcing arrival of Southern's busses and providing porter services for passengers getting on them, and Dixie's furtherance of Southern's business included a sale of the "goods" (i. e. of the transportation) of the Southern Bus Line Company against which the defendants were on strike. That the union's dispute with Southern was real and substantial and that the threat to picket "unless the plaintiff would cease doing business with Southern" grew out of it is manifest. The assertion by defendants of a right .and intention to publicize their grievances against Southern by peaceful picketing and plaintiff's denial of such right and institution of court action to prevent execution of the intention present a case involving and growing out of a labor dispute in all essentials the same as that upon which the court made its declarations of the law in the Wagshal case. The brevity of expressions of the Supreme Court to the effect that a case growing out of such boycotting for the labor organization purposes here shown, and plaintiff's resistance to it, is one that grows out of a "traditional source" of labor disputes within the scope of the Norris LaGuardia Act implies only that the court considered the law on the question settled beyond need for amplification.

That power to enjoin such secondary boycotting by peaceful picketing arising in such a labor dispute was limited by the requirements of Norris LaGuardia Act before· the passage of the Labor Management Relations Act was decided in this court in Donnelly Garment Company v. Dubinsky, 8 Cir., 154 F.2d 38, and in the Tenth Circuit in Taxi-Cab Drivers Local No. 889 v. Yellow Cab Operating Company, 123 F.2d 262. The law was firmly settled by many decisions. Milk Wagon Drivers Union v. Lake Valley Farm Products, Inc., 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Lauf v. E. G. Shinner & Co., 303 U.S 323, 58 S.Ct. 578, 82 L.Ed. 872; New Negro Alliance v. Sanitary Grocery Company, 303 U.S. 552, 58 S.Ct. 703, 82 L.Ed. 1012; Fur Workers Union v. Fur Workers Union, 70 App.D.C.

122, 105 F.2d 1; Id., 308 U.S. 522, 60 S.Ct. 292, 84 L.Ed. 443; Lee Way Motor Freight, Inc., v. Keystone Freight Lines, 10 Cir., 126 F.2d 931; East Texas Motor Freight Lines v. International Brotherhood of Teamsters, 5 Cir., 163 F.2d 10.

The contentions here that the law as so settled was changed by the Taft-Hartley Act of 1947 and that as a result of that Act the door has been opened to private persons to seek and obtain injunction in cases growing out of such a labor dispute as is here presented are not compatible with the declarations of the Supreme Court in its opinion in the Wagshal case. It was argued in that case, just as it is argued here, that the Act of 1947 has by implication removed the limitations of the Norris LaGuardia Act upon the power of the federal district courts to issue injunctions against what are known as secondary boycotts.[1] But the Supreme Court's terse answer to the arguments, 333 U.S. at page 442, 68 S. Ct. at page 632, and its succinct declaration that "the law has been changed only where an injunction is sought by the National Labor Relations Board, not where

proceedings are instituted by a private party", may not be ignored. The proceedings here were instituted by "a private party," and the language of the Supreme Court is squarely apposite to this case and this court must apply it.

We recognize that the proceedings in the Wagshal case before the Supreme Court required the court to affirm the dismissal of an appeal by the Court of Appeals for the District of Columbia, 161 F. 2d 380, and that the ultimate effect of its order of affirmance was to permit an injunction pendente lite against a labor union and others issued at the instance of a private party to remain in effect. That result came about because the pretended labor dispute was in truth the kind of a sham by which the courts never permit themselves to be deceived nor the law to be perverted. In the particular respect of the sham character of the labor dispute the Wagshal case is in contrast with the genuine controversy over wages and working conditions here involved. There were dissents as to what should have been the ultimate disposition of the Wagshal case. But

---

[1] Arguments in Wagshal's brief relevant to the motion passed on by the Supreme Court were:

" * * * the National Labor Relations Act as amended by the Labor Management Relations Act of June 23, 1947 (Act of July 5, 1935, c. 372, 49 Stat. 449, 29 U.S.C. Sec. 151–166 [29 U.S.C.A. §§ 151–166], Pub.No.198, 74th Cong., as amended by Act of June 23, 1947, Pub.Law 101, 80th Cong.), effective August 23, 1947, in Sec. 8 (b) (4) (A) [29 U.S.C.A. § 158 (b) (4) (A)], renders it a Union Unfair Labor Practice for a Union to require an employer not to handle or sell products of any other producer, processor or manufacturer, and provides further, in Sec. 10 (h) [29 U.S.C.A. § 160] thereof that Courts not be limited in granting relief in enforcing orders of the Board, pursuant to Sec. (9) of that Act [29 U. S.C.A. § 159] giving the Board power to enforce the provisions of Sec. (8), by the provisions of the Norris-LaGuardia Act.

"To the extent that petitioners allege a 'dispute' between them and the respondent concerning a sale by the latter of a certain non-union product as a ground for bringing this cause within the anti-injunction provisions of the Norris-La Guardia Act, such a dispute can no long-

er, by virtue of the express provisions of the New Labor Management Relations Act of 1947, be treated as a labor dispute rendering the United States District Court powerless to issue injunctive process."

The corresponding contention for appellee Dixie here concerning the effect of the Labor Management Relations Act on the power of the District Court to issue the injunction in this case is stated in its brief as follows: "If a 'labor dispute' be involved, an action for injunction in the District Court is not maintainable by 'a private individual' whereas it would be if petitioned for by officials representing N.L.R.B. If no 'labor dispute' is involved as in the case at bar injunctive relief may be granted by the District Court under its common law powers."

Wagshal argued that such a dispute as is present in both the cases "can no longer be treated as a labor dispute." Appellee puts the same contention, "no labor dispute is involved."

Our careful study of all the arguments and citations for appellee Dixie has persuaded that they were within the purview of the Supreme Court's inquiry in its consideration of and answer to the contentions of Wagshal and are foreclosed here.

the dissents in the Court of Appeals and in the Supreme Court indicate clearly that none of the justices in either court was in disagreement on the question that is conclusive against the decree in this case, namely, that this case to enjoin secondary boycott threatened in a real and substantial labor dispute over wages and working conditions, grows out of a labor dispute within the scope of the Norris LaGuardia Act and was and remains subject to the limitations on the court's powers specified in that Act, and that the Taft-Hartley Act of 1947 has not changed the law so as to permit issuance of the injunction here granted at the suit of a private party.

The decree of injunction issued on the conclusion that the Act of 1947 had changed the law so that the court was empowered to issue the injunction at a private party's instance, without regard to the limitations of the Norris LaGuardia Act, cannot be sustained in view of the Wagshal decision.

We have given careful consideration to thorough and ably prepared briefs presented by counsel but hesitate to elaborate upon what we find the Supreme Court has seen fit to declare briefly. If, however, we pass from the Wagshal case to the contentions presented here we think it clear that reversal of the injunction here would have been required without the mandate of that case.

■ Aside from the Wagshall decision, we think it was already clearly established that federal district courts are not vested with jurisdiction in cases involving or growing out of labor disputes to enjoin at the instance of private parties acts or conduct which may be alleged and found by the court to constitute violations of Section 303(a) of the Labor Management Relations Act of 1947, and which are therefore also by definition unfair labor practices:

(1) By its terms Section 303 confers no rights on private parties other than the right to seek damages for the acts and conduct declared to be unlawful for the purposes of the section only, but the power to seek and obtain injunctive relief in respect to the same acts and conduct is preserved in the National Labor Relations Board by the National Labor Relations Act as amended. National Labor Relations Act, Secs. 8, 10, 10(a), 10(e), 10(f), 14, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.; National Labor Relations Act, Secs. 8(b) (4), 10(*l*), as amended 61 Stat. 136, 29 U.S.C.A. § 151 et seq.; Labor Management Relations Act of 1947, Secs. 303, 303(a), 303(b), 208, 61 Stat. 136, 29 U.S.C.A. § 141 et seq.

(2) The terms of the four Acts concerning labor relations and labor management relations and the limitations on the use of injunctive process at the instance of private parties in respect to such labor relations, coincident with the powers conferred on the Labor Board to seek and obtain such process in the public interest, prescribe a consistent pattern to provide for a uniform administration of the labor relations laws in the public interest by public authority. National Labor Relations Act, 49 Stat. 449, §§ 8, 10, 10(a), 10(e), 10(f), 14, 29 U.S. C.A. § 151 et seq.; National Labor Relations Act, as amended, §§ 8(b) (4), 10(*l*), 61 Stat. 136, 29 U.S.C.A. § 151 et seq.; Labor Management Relations Act of 1947, §§ 303, 303(a), 303(b), 208, 61 Stat. 136, 29 U.S.C.A. § 141 et seq.; Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115.

(3) That any inherent power that remains in federal district courts to use the injunctive process in such suits of private parties brought before them is completely negatived by the terms of the legislation, the legislative history and the controlling precedents. 79 Cong.Rec. 7651–7652; 93 Cong.Rec. 4770, 4858–4859, 4863–4864, 4872, 4874, 6383, 6445–6446. H.Rep.No.1147, 74th Cong., 1st Sess., p. 24. S.Rep.No.573, 74th Cong., 1st Sess., p. 15; General Committee v. Missouri-Kansas-Texas Railroad Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76; Milk Wagon Drivers Union v. Lake Valley Farm Products, Inc., 311 U.S. 91, 61 S. Ct. 122, 85 L.Ed. 63; National Licorice Co. v. National Labor Relations Board, 309 U. S. 350, 60 S.Ct. 569, 84 L.Ed. 799; Amazon Cotton Mill Co. v. Textile Workers Union of America, 4 Cir., 167 F.2d 183; Donnelly Garment Co. v. Dubinsky, 8 Cir., 154 F.2d 38; Emlenton Refining Co. v. Chambers, 3 Cir., 14 F.2d 104, certiorari denied 273 U.S. 731, 47 S.Ct. 240, 71 L.Ed. 863; I. L. U. v.

908

Sunset Line & Twine Co., D.C.Cal., 77 F. Supp. 119; Gerry v. Superior Court, Cal. Sup., 194 P.2d 689.

As we are convinced that the district court was without power to grant the decree of injunction appealed from and that the complaint did not present a case for such injunction,

The decree is reversed with instructions to dismiss.