**SCHWAB et al. v. COLEMAN, U. S.
District Judge.**

No. 5293.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1944.

Simon E. Sobeloff, of Baltimore, Md. (Bernard M. Goldstein, of Baltimore, Md., on the brief), and Joseph Savoretti, Acting Com'r, Immigration and Naturalization Service, pro se, in support of petition.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an application for a writ of mandamus to require Hon. William C. Coleman, one of the District Judges of the United States for the District of Maryland, to pass upon certain petitions for naturalization pending before him. The petitioners here are the Commissioner of Immigration and Naturalization of the United States and five persons who filed the petitions for naturalization before Judge Coleman. Each of these five persons has complied with all the requirements of the naturalization laws for admission to citizenship; and, as to each, admission to citizenship is recommended by the Commissioner. Each, however, is a native of Germany who left that country after the beginning of the Nazi regime. Judge Coleman refused to pass upon their applications and continued the hearings thereon because of a policy which he has adopted not to grant citizenship during the war to German enemy aliens who have left Germany since the beginning of the Nazi regime, except in the case of members of our armed forces.

There is no dispute as to the facts or as to their showing without contradiction that the petitioners are persons of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States. One is a Rabbi of a Hebrew Synagogue in Baltimore. Two of the others are a noted ophthalmologist, attached to the Wilmer Clinic of Johns Hopkins Hospital, and his wife. Another is a woman whose father is dead, whose mother is in a German concentration camp, who has no relatives in foreign military service, who has three cousins in the armed forces of the United States and who de-·sires citizenship in order that she herself may join the Women's Army Corps. The remaining applicant is a trained nurse, the wife of an officer in the United States Army. The following succinct statement of the pertinent facts appears in the brief of the Commissioner:

"The petitioners for naturalization, all natives of Germany and now citizens thereof or stateless and residents of Baltimore, Maryland, filed their respective petitions for naturalization in the United States District Court for the District of Maryland, at Baltimore, Maryland. In each case the petitioner for naturalization and his witnesses were accorded a preliminary examination prior to the filing of his petition, and a preliminary hearing pursuant to the provisions of section 333 of the Nationality Act of 1940 (54 Stat. 1156, 8 U.S.C.A. § 733) was held subsequent to the filing of his petition. The evidence in each case establishes that for at least five years immediately prior to the filing of his petition each petitioner for naturalization had resided continuously in the United States and that during all of that time he had been a person of good moral character, attached to the principles of the Constitution and well-disposed to the good order and happiness of the United States, and entitled to naturalization under all the applicable provisions of the naturalization laws.

"Subsequent to the filing of the petition the clerk of court notified the Commissioner of Immigration and Naturalization of the pendency of each and every petitition involved herein, and at the time of the final hearings hereinafter mentioned, more than ninety days had intervened between the notice from the clerk and the final hearing. During this intervening period the Government conducted an investigation to determine petitioners' eligibility to naturalization including whether petitioners were loyal to the United States and attached to the principles of the Constitution of the United States. The investigation was conducted in the same manner as that conducted in all cases involving alien enemies. In the course of the investigation the alien registration records and the fingerprint records of the Federal Bureau of Investigation were checked. All available information regarding the petitioners for naturalization was obtained from the files of the Federal Bureau of Investigation, the Army and Navy Intelligence Divisions, and the

local police authorities. In addition officers of this Service made inquiry concerning petitioners in the neighborhoods in which they lived. Sworn statements were taken from petitioners regarding their background and activities since coming to this country. No information was discovered which indicated the necessity for further investigation. As the result of the investigation conducted in this case it was concluded by the Commissioner that petitioners had fully established their eligibility to naturalization.

"The Court set the cases for final hearing on June 13, 1944. On the trial of the cases held on June 13 and 14, 1944, the petitioners for naturalization and their witnesses testified under oath in support of the material allegations of their respective petitions. The evidence presented established that for at least five years immediately prior to the filing of the petition in each case, and until the final hearing thereof, the petitioners had resided continuously in the United States and that during all such period they had been persons of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the United States.

"After hearing all the testimony offered in behalf of the petitioners the trial court, on June 13 and 14, 1944, concluded that it should not make a final determination of the issues in the cases involved for the reasons appearing in the record which may be summarized as follows: (1) That during a state of war an investigation as to background and antecedents cannot be conducted, and, (2) that petitioners for naturalization who have not resided in the United States since prior to 1933 have not resided a sufficient length of time for the Court or the petitioners to know whether they are attached to the principles of the Constitution due to the emotional conditions under which they came here.

"The final hearing in each case was thereupon continued indefinitely. Counsel for the petitioners urged that the Court either grant or deny each petition on the basis of the evidence adduced at the hearings. This the Court refused to do."

Judge Coleman has filed a written opinion setting forth his reasons for refusing to pass upon the applications for citizenship. He refers to this opinion as his answer to the petition for mandamus; and we have given it careful and respectful consideration. In that opinion he makes it very clear that he is refusing to take final action upon the petitions for two reasons, (1) because the war makes it impossible to conduct an investigation in Germany with regard to the petitioners, and (2) because he thinks that refugees driven out of Germany by the Nazi regime are not able, because of the emotional strain to which they have been subjected, to attach themselves to this country in the manner that the law contemplates. The heart of the court's reasoning is set forth in the following excerpt from his opinion:

"We are not questioning the good faith or the thoroughness of the examination made by the administrative authorities *in so far as they have been able to make it,* but the points which the court is stressing, and which seem in the public interest to fully justify a postponement of final action in cases of this kind, are the following: First, the state of war,—the fact that the persons seeking citizenship are nationals of a country with which we are at war. Congress has provided that, under certain circumstances, such persons may be admitted to citizenship. The law does not say that they *must* be. It provides that they may be presented for citizenship if their declaration of intention has been existent for a given length of time, and there are other administrative requirements. All of those have been met. But it does not say that the state of war shall be swept aside from consideration by the Court, or the Bureau. It does not say that the Court is forbidden to take into account the inability to ascertain what normally should be ascertained about petitioners of this kind because of the state of war, and there is an almost complete inability to do so. Such ascertainment may add nothing. It may only increase the proof of loyalty. But the fact remains that *the war has shut the door upon a full, thorough investigation.* The petitioners' records in Germany, their proclivities and associations are undisclosed except by their own statements and those of their relatives resident in this country, and of their newly made friends in this country—persons for the most part of German extraction or birth themselves who knew little if anything about the petitioners until, a few years ago, when they came to this country under the stress of war, or near-war conditions.

"Secondly: While the law says that persons meeting the requirements set forth

in the statute, even though nationals of enemy countries, *may* be naturalized, it does not say that the Court shall close its eyes to any emotional condition under which the applicant has come to, and taken up residence in this country, or the length of time which may affect a determination as to whether or not the applicant is *able,* —not so much a question of whether he is *willing* but whether he is in fact *able,*—to attach himself under these emotional and abnormal war conditions to this country. That is the second consideration to which the Court feels, in the public interest, it must give great weight."

And more specifically with respect to petitioners the Court said:

"It so happens that these unfortunate petitioners are of a class who have been persecuted or would, in all likelihood, have been persecuted had they remained in Germany, by the brutality of those in control of their native land. The Court has the greatest sympathy for them. The Court is glad that they have been able to find refuge and help in this free country, and their records appear to be eminently satisfactory from the point of view of law and order and as to their attachment, *in so far as they are able up to the present time to be attached,* to this country. The record on that score is not now being impugned, but the war has produced abnormal conditions and this Court does not think that Congress meant to say that, in time of war, every refugee from an enemy country, just because he or she meets the requirements with respect to residence and education, makes the normal professions of loyalty and the Naturalization Officials have no information adverse to such person, must, willy-nilly, be admitted to citizenship. What this Court believes is a proper, reasonable interpretation to give to the statute is that unless the residence and occupation of the applicant has extended over such a period of time in this country as to have developed family, business and other connections as will assure the kind of stable attachment to our country which is normally contemplated in peace time, and unless it can be ascertained beyond all serious doubt that such attachment is complete and not divided, then, in time of war, it is best to postpone final action in cases of those who are nationals of a country with which we are at war, until the war is ended."

█ It must be assumed that in passing the statute authorizing the naturalization of enemy aliens, Congress knew that it would not be possible to investigate their records in a country with which we were at war at the time and did not intend such investigation to be a prerequisite to admission. The statute in its general provisions requires five years residence and proof of good character and attachment to the Constitution during such period* (8 U.S.C.A. § 709(a) and (b); and there is nothing in the provision as to naturalization of aliens which requires proof with respect to matters prior to such five year period. For the court to impose as a con-

---

* The committee which drafted the Nationality Act of 1940 had the following to say about the five year requirement:

"The five-year residence requirement has been a part of the naturalization statutes almost continuously from 1795. It is based upon the belief that a newcomer before being admitted to citizenship should remain in this country sufficiently long to establish his standing in the community, to learn the language, and to understand and appreciate the essential facts and meaning of its history and nature and principles of its Government. No material reason has been advanced for a change in this respect, except as to a few special groups of persons where the conditions would not appear to require five-year's probation. (Codification of the Nationality Laws of the United States, House Committee Print. 76th Congress, 1st Session, 1939, Part I, p. 22.)"

See also Petition of Zele, 2 Cir., 140 F.2d 773, 776, where it is said:

"Under the law the burden is on the petitioner to establish good moral character only during the five-year period, not earlier. Petition of Zele, 2 Cir., 127 F.2d 578; United States v. Clifford, 2 Cir., 89 F.2d 184; United States v. Rubia, 5 Cir., 110 F.2d 92; In re Aldecoa, D.C.Idaho, 22 F.Supp. 659, 661. And it has consistently been construed liberally so as to sanction forgiveness after the expiration of five years from the date of a disbarring misdeed. In re Trum, D.C.W.D.Mo., 199 F. 361; In re Centi, D.C.W.D.Tenn., 217 F. 833; In re Guliano, D.C.S.D.N.Y., 156 F. 420; United States v. Mirsky, D.C.S.D.N.Y., 17 F.2d 275; In re Nagy, D.S.S.D.Tex., 3 F.2d 77; Application of Polivka, D.C. W.D.Pa., 30 F.Supp. 67. See, also, In re Schlau, 2 Cir., 136 F.2d 480."

dition of naturalization that an examination be made as to the background of petitioner preceding his coming to this country, where he has resided for five years or more, and in a country where it cannot be made because of war conditions, is not only to add to the requirements which the applicant must·meet a condition which Congress has not imposed, but is also, in so far as the condition is insisted on, to nullify the provision of the statute which permits the naturalization of enemy aliens.

The same is true of the Judge's ruling that Germans who meet all the conditions for naturalization imposed by the statute are nevertheless to be denied naturalization at this time if they have come from Germany since the beginning of the Nazi regime, on the ground that the court is not satisfied that under such conditions they can form the sort of attachment· to this government that the law contemplates. The Judge does not point to anything in the evidence which could cause anyone to doubt the good character or attachment of any of the applicants. He refuses to.pass upon their applications solely because he is of opinion that alien enemies who have come to the country from Germany so recently (although they have resided here as long as Congress requires) cannot really determine their attachment to this country because of emotional strains to which they have been subjected and consequently are not entitled to be naturalized until the war is over. This, however, is in effect to engraft an exception upon the general language of the statute and is a matter for Congress. There can be no question but that the prescribing of rules to be followed in the granting of naturalization is a matter for Congress, and not for the courts; and while the courts may, of course, exercise a discretion as to the granting of continuances, such discretion must be exercised within the framework of the law, not to add to or to subtract from its provisions.

And, quite apart from the question of adding to or restricting the meaning of the statute, we do not think that the reason given by the learned judge is an adequate one for denying or delaying naturalization, or that an exercise of discretion in granting a continuance can properly be based thereon. The fact that applicants are refugees from persecution in the country from which they are seeking to expatriate themselves, instead of being a reason for viewing with suspicion their declaration of attachment to this country, is manifestly a reason for treating the declaration as made in good faith and upon a sound basis of fact. The common gratitude, which it must be assumed that they have to the country that··has furnished them a haven of refuge from oppression and which grants them a freedom which they were denied in the country from which they have come, furnishes the strongest reason for thinking that they are in fact attached to the principles of our Constitution and to the good order and well being of the country to which they owe so much. The idea that because they have suffered persecution at the hands of the dominant faction in their home country they are unable to form the attachment which the law contemplates for the land which has given them refuge, is one which finds support neither in reason nor in law.

Congress is given power by the Constitution "to establish an uniform Rule of Naturalization." Art. 1, sec. 8, cl. 4. And when it establishes such uniform rule, those who come within its provisions are entitled to the benefit thereof as a matter of right, not as a matter of grace from the naturalization court. As said by Mr. Justice Brandeis in Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 427, 70 L.Ed. 738:

"The opportunity to become a citizen of the United States is said to be merely a privilege, and not a right. It is true that the Constitution does not confer upon aliens the right to naturalization. But it authorizes Congress to establish a uniform rule therefor. Article 1, § 8, cl. 4. The opportunity having been conferred by the Naturalization Act, there is a statutory right in the alien to submit his petition and evidence to a court, *to have that tribunal pass upon them, and, if the requisite facts are established, to receive the certificate.* See United States v. Shanahan, D. C., 232 F. 169, 171. There is, of course, no 'right to naturalization unless all statutory requirements are complied with.' United States v. Ginsberg, 243 U.S. 472, 475, 37 S.Ct. 422, 61 L.Ed. 853; Luria v. United States, 231 U.S. 9, 22, 34 S.Ct. 10, 58 L.Ed. 101. The applicant for citizenship, like other suitors who institute proceedings in a court of justice to secure the determination of an asserted right,

must allege in his petition the fulfillment of all conditions upon the existence of which the alleged right is made dependent, and he must establish these allegations by competent evidence to the satisfaction of the court. In re Bodek, Cir., 63 F. 813, 814, 815; In re Alien, 7 Hill (N.Y.) 137. In passing upon the application the court exercises judicial judgment. It does not confer or withhold a favor." (Italics supplied.)

In accord is the expression of Mr. Justice Butler, speaking for the Court in United States v. Schwimmer, 279 U.S. 644, 649, 49 S.Ct. 448, 449, 73 L.Ed. 889, as follows:

"Every alien claiming citizenship is given the right to submit his petition and evidence in support of it. And, if the requisite facts are established, he is entitled as of right to admission. On applications for naturalization, the court's function is 'to receive testimony, to compare it with the law, and to judge on both law and fact.' Spratt v. Spratt, 4 Pet. 393, 408, 7 L.Ed. 897."

In the Nationality Code of 1940, 54 Stat. 1137, 8 U.S.C.A. § 501 et seq., Congress deals specifically with the naturalization of alien enemies. The provisions here applicable are sec. 326(a) (b), 54 Stat. 1150, 8 U.S.C.A. § 726(a) and (b), which are as follows:

"Sec. 326. (a) An alien who is a native, citizen, subject, or denizen of any country, state, or sovereignty with which the United States is at war may be naturalized as a citizen of the United States if such alien's declaration of intention was made not less than two years prior to the beginning of the state of war, or such alien was at the beginning of the state of war entitled to become a citizen of the United States without making a declaration of intention, or his petition for naturalization shall at the beginning of the state of war be pending and the petitioner is otherwise entitled to admission, notwithstanding such petitioner shall be an alien enemy at the time and in the manner prescribed by the laws passed upon that subject.

"(b) An alien embraced within this section shall not have such alien's petition for naturalization called for a hearing, or heard, except after ninety days' notice given by the clerk of the court to the Commissioner to be represented at the hearing, and the Commissioner's objection to such final hearing shall cause the petition to be continued from time to time for so long as the Commissioner may require."

The learned judge was without power to add to these provisions a requirement that applicant, if a German, must have come to this country prior to the beginning of the Nazi regime or else have the hearing on his petition continued until after the war. As said by the Circuit Court of Appeals of the First Circuit in Tutun v. United States, 1 Cir., 12 F.2d 763, 764:

"Congress having laid down the rules governing the admission of aliens to citizenship, it is not within the power of the court, in the exercise of an arbitrary discretion, to add to them. * * * While a wide discretion is lodged in the judge who hears a petition for naturalization, this discretion cannot be exercised arbitrarily or in a manner which adds to the requirements contained in the act, which must be liberally construed in favor of the petitioner."

See also United States v. Ginsberg, 243 U.S. 472, 474, 37 S.Ct. 422, 61 L.Ed. 853.

■■ If the judge had passed upon the petitions of applicants and denied them naturalization, they could have appealed to us and asked a reversal of his decision, which could then have been reviewed by us in the light of the law and the evidence. We do not think that their right to such review can be defeated by continuing the hearing of the petitions over their protest. A continuance may, of course, be granted in naturalization cases as well as in others, and whether or not such continuance shall be granted is ordinarily a matter resting in the court's discretion; but the discretion thus vested in the court is a sound, not an arbitrary, discretion; and it may not be exercised in such way as to result in the denial of the right of review to which a party is entitled. Congress recognized that in case of enemy aliens a more thorough investigation would be required than in ordinary cases and expressly provided that, before the petition of an enemy alien should be brought on for hearing, ninety days' notice thereof should be given the Commissioner, and that, upon the Commissioner's objection to the hearing, continuances should be granted from time to time "for so long as the Commissioner may require." This clearly contemplates that a continuance shall be granted for so long a time as the Commissioner may require to make the in-

vestigation that he deems necessary; but the Commissioner has made such investigations with respect to these applicants, and not only has he reported to the court that he is satisfied but evidence has been produced showing beyond peradventure that the requirements of the statute have been met by the applicants. There is nothing in the record to justify continuance on any other ground. Whether petitioners were entitled to naturalization or not, they were, at least, entitled to have their petitions passed upon so that they might appeal from an adverse decision to this court; and the continuance over their protest did not lie within the limits of judicial discretion as to granting continuances but amounted to a refusal to exercise power which petitioners had a right to have exercised. 35 Am.Jur. pp. 25, 26.

Under such circumstances there can be no question as to the power and duty of this court to grant the writ of mandamus prayed. From decision on the petitions for naturalization appeal lies to us. Tutun v. United States, 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738. And it is well settled that a court given power of review may by mandamus compel the court over which it is given such power to exercise its jurisdiction so that the power of review may not be defeated. See Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185; Adams v. United States ex rel. McCann, 317 U.S. 269, 273, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435; McClellan v. Carland, 217 U.S. 268, 279, 280, 30 S.Ct. 501, 54 L.Ed. 762; Ex parte Pennsylvania Co., 137 U.S. 451, 452, 11 S.Ct. 141, 34 L.Ed. 738; United States v. Malmin, 3 Cir., 272 F. 785; Barber Asphalt Paving Co. v. Morris, 8 Cir., 132 F. 945, 67 L.R.A. 761. See also American Chain & Cable Co. v. Federal Trade Commission, 4 Cir., 142 F. 2d 909, 912. In Birnbaum v. United States, 4 Cir., 107 F.2d 885, 887, 126 A.L.R. 1207. in holding an order not appealable because not final in character and pointing out the right of appellant to have a final order entered from which appeal might be taken, this court said:

"If he [i. e. a person convicted of crime] objects to probation and desires a sentence from which he can appeal for the purpose of reviewing the trial, all that he need do is ask that sentence be imposed. It is true, as argued, that the statute vests in the trial judge discretion either to suspend the sentence or merely to suspend its execution; but it would unquestionably amount to an abuse of the discretion thus vested for the judge to refuse to impose sentence when requested by one who desired a final judgment from which he might prosecute an appeal. Such an abuse of discretion could be corrected by mandamus or by proceeding in the nature thereof."

For the reasons stated, we are of opinion that Judge Coleman should proceed forthwith to pass upon the petitions for naturalization and that petitioners are entitled to the writ of mandamus prayed. It is clear, however, that the learned judge has refused to act upon the petitions merely because of an erroneous view of the law applicable; and we assume that it will not be necessary that the writ of mandamus actually issue requiring him to act, now that this court has passed upon the questions of law involved. Order will accordingly be entered that petitioners are entitled to the writ but the writ will not issue until further order.

Petition granted.