**INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, CIO, et al., Plaintiffs-Appellees,**

v.

**UNDERWOOD CORPORATION, Defendant-Appellant.**

No. 182, Docket 23405.

United States Court of Appeals, Second Circuit.

Argued Dec. 30, 1954.

Decided Jan. 6, 1955.

of the statute of limitations both as to filing of claims and the two-year limitation for bringing action against Clark-Congress Corporation which was voluntarily dissolved on December 27, 1951 * * *, the defendant tenants have filed similar claims against Clark-Congress Corporation and the Government under the Federal Tort Claims Act as noted at the bottom of page 14 of the Government's * * * brief."

Albert L. Goldman, Boston, Mass., (Grant & Angoff, Boston, Mass., and Daniel Baker, Stamford, Conn., of counsel), for plaintiffs-appellees.

Reich, Spitzer & Feldman, New York City (M. James Spitzer and Martin I. Rose, New York City, of counsel), for defendant-appellant.

Before FRANKFURTER, Circuit Justice, and FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

On November 11, 1954, the defendant, Underwood Corporation, engaged in interstate commerce, filed a complaint in the Connecticut Superior Court, seeking in addition to damages for alleged pecuniary injuries an injunction against alleged activities of the plaintiffs; a copy of that complaint is set forth in the Appendix to this opinion. On November 22, 1954, plaintiffs filed a complaint in the court below seeking an injunction to restrain Underwood from

The marginal note in the *amicus curiae* brief filed by the Government in Nos. 11018, 11019, 11020, follows: "Another possible basis for financial interest of the United States in these cases arises from the fact that similar claims have been asserted under the Federal Tort Claims Act and are now pending in the court below. (p. 14.)

prosecuting its state-court action. The next day, plaintiffs moved for a temporary injunction. After argument, Judge Smith entered an order granting a preliminary injunction which restrained Underwood from proceeding with its state-court suit, "so far as it seeks injunctive relief." On December 16, Judge Smith denied Underwood's motion for dissolution of the preliminary injunction. Underwood at once filed a notice of appeal and moved in this court for an order staying Judge Smith's injunction order pending appeal. After considering the oral arguments and briefs concerning that motion, this court, on December 23, entered an order denying it. 2 Cir., 219 F.2d 99. That order is quoted in part in the Appendix to this opinion. We set December 30 as the date for argument of the appeal, and heard it on that date.

1. The basic problem is that of the jurisdiction of the district court.[1] There is no diversity of citizenship here. However, 28 U.S.C. § 1337 confers on federal district courts jurisdiction of "any civil action or proceedings arising under any Act of Congress regulating commerce." The Labor Management Relations Act, 29 U.S.C.A. § 141 et seq., is such an Act. But 28 U.S. C. § 2283 carves out a large segment of what would otherwise be the district court's jurisdiction, by providing that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or when necessary in aid of its jurisdiction, or to protect or effectuate its judgment." Section 10 of the Labor-Management Relations Act, 29 U.S.C.A. § 160—in subsections (j)

and (l)—expressly authorizes a federal district court, in certain specified circumstances, to issue injunctive orders at the suit of the N.L.R.B.; and, were there such a suit, the court below would be the particular district court empowered by that Act to do so.[2] But the specified circumstances grounding jurisdiction to make any such order do not here exist, since Underwood has not lodged with the Board a charge of unfair labor practices.

There remains the question whether the phrase "necessary in aid of its jurisdiction," in 28 U.S.C. § 2283, supplies the basis of jurisdiction. In approaching that question, we make the following assumptions, *arguendo:* (1) Underwood in its state-court suit sought injunctive relief against nothing other than conduct constituting unfair labor practices exclusively covered by the Labor-Management Relations Act. (2) The state court has no valid power to grant such an injunction, so that if it did enter an injunction order, that order, if affirmed by the highest state court, would be reversed by the United States Supreme Court on the ground that, in the Act, Congress conferred such power exclusively upon the federal courts. See Garner v. Teamsters Union, 346 U.S. 485,[2a] 74 S.Ct. 161, 98 L.Ed. 228. That is, we assume, *arguendo,* that the exception noted in Garner, 346 U.S. at page 488, 74 S.Ct. 161, does not permit the state court to grant such injunctive relief at the suit of Underwood. (See infra, point 2 of this opinion.)[3]

We add a further assumption, *arguendo,* i. e., that the court below, at

---

1. We assume that, if the court below had jurisdiction, it did not "abuse" its discretion in granting the temporary injunction.

2. The alleged acts of plaintiffs occurred in the District of Connecticut; see Sec. 10 (j) and (l).

2a. Underwood contends that its complaint asks an injunction against conduct which does not constitute unfair labor practices within the Act, or, in the alternative, that the conduct is in part not within the exclusive authority of the Board and the federal courts. We need not consider that contention. See point 2 of this opinion.

3. The state court could validly entertain underwood's suit for damages. United Const. Workers v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L. Ed. 1025.

the suit of the Board, would have had potential jurisdiction, as "necessary in aid of its jurisdiction," under 28 U.S. C. § 2283, to enjoin Underwood from prosecuting its state-court suit, notwithstanding Underwood had not filed a complaint with the Board. In Capital Service, Inc., v. N.L.R.B., 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887, the company obtained a state court injunction against certain union conduct, and also petitioned the Board. The Board found the union's conduct in part protected and in part prohibited by Section 8(b) (4). Where there is such an unfair practice, Section 10(l) allows the Board to procure an injunction against the union. The Board sought two injunctions from the federal district court— one against the union under Section 10(l) and one against the company to prevent it from enforcing its state decree. The United States Supreme Court held that, since the district court could enjoin the union under Section 10(l), it could issue a valid injunction against the company "in aid of its jurisdiction."

But here the company filed no complaint with the Board. Nevertheless, as above noted, we assume, arguendo, that, if the Board here had sought the injunction, there would have been jurisdiction in the district court. An analogy may be found in judicial interpretation of the All Writs Act, 28 U.S. C. § 1651(a) which provides, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." It has been held that a federal appellate court, "in aid of its jurisdiction," may

issue a writ of mandamus to require a district judge to hear a case clearly within his jurisdiction which he has erroneously refused to hear.[4] In such a situation, the jurisdiction of the appellate court, thus aided, is potential; it acts "so that the power of review may not be defeated."[5]

So here it is arguable that, if moved by the Board, the district court, by enjoining Underwood, could have acted validly to prevent the state court from intruding on the exclusive power of the Board and the exclusive jurisdiction of the district court. For then it might be said that the Board had a legal interest entitled to protection, and thus a "standing" to maintain such a suit, with the consequence that the district court would have potential jurisdiction in "aid of its jurisdiction." Cf. Board of Governors of Federal Reserve System v. Transamerica Corporation, 9 Cir., 184 F.2d 311; West India Fruit & Steamship Co. v. Seatrain Lines, 2 Cir., 170 F.2d 775. We may also assume, arguendo, that the same would be true if here the Board had intervened and asked the court to grant the injunction.[6]

All the foregoing assumptions, however, do not help here, since the Board did not ask the district court to act. This outstanding fact distinguishes Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199; and Porter v. Dicken, 328 U.S. 252, 66 S.Ct. 1094, 90 L.Ed. 1203. The plaintiffs have at stake no legally protected interest of their own, and therefore have no "standing" to maintain their suit.[7] It follows, we think, that the district court lacked power

4. See, e. g., Schwab v. Coleman, 4 Cir., 145 F.2d 672, 678, 156 A.L.R. 355; United States v. Hall, 9 Cir., 145 F.2d 781, 784; 6 Moore, Federal Practice (2d ed.) pp. 94 and note 50, 102 and note 86.

5. Schwab v. Coleman, 4 Cir., 145 F.2d 672, 678, 156 A.L.R. 355.

6. Cf. West India Fruit & Steamship Co. v. Seatrain Lines, 2 Cir., 170 F.2d 775.

7. See, e. g., Alabama Power Company v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L. Ed. 374; Tennessee Electric Power Company v. T. V. A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; City of Atlanta v. Ickes, 308 U.S. 517, 60 S.Ct. 170, 84 L. Ed. 440; cf. L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198.

to grant an injunction "in aid of its jurisdiction," because it had no jurisdiction to aid.

Despite the absence of a legally protected interest in plaintiffs, it may be assumed, *arguendo,* that they could have maintained their suit, and the court would have had potential jurisdiction, if Congress had provided that an "aggrieved person" (or the like) could, in such manner, vindicate or protect the Board's interest;[8] for then the plaintiffs would be part of a class of what we have called "private Attorney Generals."[9] But, as there is no such statutory provision,[10] we think the district court had no jurisdiction. See, e. g., Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Amalgamated Utilities Workers v. Consolidated Edison Company, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738.

We recognize that the result may be regarded as undesirable, if, as we have assumed, *arguendo,* Underwood's state-court complaint seeks an injunction against nothing but unfair labor practices which are exclusively covered by the Labor Management Relations Act. For, if the state-court does grant such an injunction, and if its order is fatally defective as exceeding the proper area of state jurisdiction but is affirmed by the highest state court, then, long before that order can be reversed by the United States Supreme Court, its practical effect may well be to break the strike by invalid means.[10a] Thus, on

that assumption, by refusing to complain to the Board, the company may achieve its aim and thereby frustrate the Congressional policy embodied in the Labor Management Relations Act, described as follows in Garner v. Teamsters Union, 346 U.S. 485, at pages 499–500, 74 S.Ct. 161, at pages 170–171, 98 L.Ed. 228: "The detailed prescription of a procedure for restraint of specified types of picketing would seem to imply that other picketing is to be free of other methods and sources of restraint. For the policy of the national Labor Management Relations Act is not to condemn all picketing but only that ascertained by its prescribed processes to fall within its prohibitions. Otherwise, it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing. For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits." It may be, as plaintiffs' counsel suggests, that the Board's failure to intervene, or otherwise to seek injunctive relief here, derives entirely from its want of a sufficient staff, and that, accordingly, frustration of the Congressional policy may stem from factors which Congress never contemplated.

No such considerations, however, can operate to create federal jurisdiction. Countering any implications, based on

---

**8.** See, e. g., F. C. C. v. Sanders Radio Station, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037; Scripps-Howard Radio, Inc., v. F. C. C., 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229; F. C. C. v. National Broadcasting Company, Inc., 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374; Alton R. Co. v. U. S., 315 U.S. 15, 62 S. Ct. 432, 86 L.Ed. 586; cf. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 149–156, 71 S.Ct. 624, 95 L.Ed. 817; L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295, 61 S.Ct. 254, 85 L.Ed. 198.

**9.** Associated Industries v. Ickes, 2 Cir., 134 F.2d 694, 705; Reade v. Ewing, 2 Cir., 205 F.2d 630; cf. Littleton v.

Fritz, 65 Iowa 488, 22 N.W. 641; Barrows v. Farnum's Stage Lines, Inc., 254 Mass. 240, 150 N.E. 206.

**10.** By way of contrast, see Section 10(f), 29 U.S.C.A. § 160(f), which provides that a "person aggrieved" may, in a federal court of appeals, attack a final order of the Board.

**10a.** If the state trial court issues a temporary injunction order, which the highest state court affirms, the United States Supreme Court cannot grant review. Montgomery Building Union v. Ledbetter Company, 344 U.S. 178, 73 S.Ct. 196, 97 L.Ed. 204.

such considerations, which might be drawn from the Congressional policy expressed in the Labor Management Relations Act, is another older and well-established policy—dating from 1793 [11] and later set forth in Section 265 of the Judicial Code (former 28 U.S.C. § 379)—of avoiding friction between state and federal courts by prohibiting the latter from enjoining the prosecution of state-court proceedings. In Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, the Court held that Section 265 of the Judicial Code precluded federal court injunctions against litigants attempting in state courts to litigate the *res judicata* effects of federal court judgments; it required an amendment of that section—contained in 28 U.S.C. § 2283—to establish an exception conferring federal jurisdiction to enjoin prosecution of such suits.[12] In the face of this policy, we think jurisdiction to enjoin state-court actions, other than those within the exceptions prescribed in Section 2283, may not be implied.

It is suggested that we confront another hurdle to jurisdiction in the Norris-LaGuardia Act [13] which forbids federal courts to grant injunctions in respect of labor disputes; the Supreme Court has indicated that the inroads on that Act made by the Labor Management Relations Act may not be widened by mere implication to permit a federal court to grant such relief; [13a] and one court of appeals has so held where a union sought an injunction.[13b] We need not consider that suggestion since, if we were to accept it, it would but supplement other sufficient grounds of our decision.

Our court must interpret the pertinent federal statutes by interpreting, as best it can, the Supreme Court's interpretations of those enactments; our decision, perforce, represents a gloss upon a gloss. Removal of the obstacles to jurisdiction here, no matter how undesirable any of us may deem those obstacles,[14] must come either from Congress or the Supreme Court.[15]

2. This must be added: In our order of December 23, 1954, we construed Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 164, as allowing the state court to grant a valid injunction, at the suit of Underwood, to prevent "mass picketing, threatening of employees, obstructing streets or highways, or picketing homes", or any activity which threatens "probable breach of the state's peace or would call for extraordinary police measures by state or civil authority." [16] On the argument of the appeal, plaintiff contended that

11. 1 Stat. 333, 335, Sec. 5.

12. The exception consists of the phrase "to protect or effectuate its judgment."

13. 29 U.S.C.A. § 101 et seq.

13a. Bakery Sales Drivers Local Union v. Wagshal, 333 U.S. 437, 442, 68 S.Ct. 630, 92 L.Ed. 792. See also Amalagamated Association of Street, Electric Ry. & Motor Coach Employees v. Dixie Motor Coach Corp., 8 Cir., 170 F.2d 902, 906–907.

13b. Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183.

14. The writer of this opinion considers them deplorable.

It may be urged that a comparable situation arises under 28 U.S.C. § 1447(d), which provides that no federal court of appeals can review, by appeal or otherwise, a district court order remanding a removed state court action.

The writer of this opinion believes that the result here is far more undesirable in terms of its practical effects and of its impact on the policy of the Labor Management Relations Act.

15. Perhaps it will soon come from the Supreme Court in its review of Amalgamated Clothing Workers v. Richman Bros Co., 6 Cir., 211 F.2d 449, certiorari granted 348 U.S. 813, 75 S.Ct. 43.

16. See the Appendix to this opinion at page 108.

we had erred because Garner permits state-court action (other than for damages) at the suit of the appropriate state officials only, and, even then, solely through criminal proceedings. We need not and do not consider that contention. For our order was merely a stop-gap pending an early hearing on the merits as to the jurisdictional question; as such, it is not at all to be relied on as an authoritative construction of the Garner doctrine. Indeed, as it now turns out, we need not have dealt with the scope of Judge Smith's order since, as we now hold, he had no jurisdiction to issue any injunction. And since we thus have no jurisdiction, of course we do not assume to define the jurisdiction of the state court.

Reversed with directions to dismiss the complaint for lack of jurisdiction.

### APPENDIX

1. Underwood's state-court complaint reads as follows:

"1. The plaintiff is a Delaware corporation authorized to do business in the State of Connecticut employing approximately 1800 persons at its plants in the City of Bridgeport in the manufacture of office business machines, equipment and miscellaneous related articles as well as the production of materials for the National defense program.

"2. The plaintiff conducts its manufacturing operations in three separate plants and locations within the City of Bridgeport.

"3. International Union of Electrical, Radio and Machine Workers, CIO (hereinafter called the International Union) is a voluntary labor organization affiliated with the Congress of Industrial Organizations (CIO) engaged in the organization and representation of employees for the purposes of collective bargaining under the Labor Management Relations Act of 1947.

"4. The defendants, Howard J. Mattioli and Tom D. Williams, are representatives of International Union of Electrical, Radio and Machine Workers, CIO.

"5. Local 267 of International Union of Electrical, Radio and Machine Workers (hereinafter called the Local Union) is a duly chartered local of International Union of Electrical, Radio and Machine Workers, CIO.

"6. The defendants, Robert Cannell, Edward Thompson, Stanley Wasik, William Basta, Sr. and June Goss, are the duly elected officers of the Local Union.

"7. The defendants, William Dobi, Jack Smith, Edward Mikita, Agnes Walley, Louis Blanchard and Frances Farrell are the duly elected members of the Executive Board of the Local Union.

"8. The International Union and the Local Union have, by reason of a certification issued by the National Labor Relations Board in June 1954, represented themselves as the collective bargaining representative of employees in an appropriate unit constituting approximately 1200 of the total of 1800 employees of the plaintiff at its various plants in the City of Bridgeport.

"9. The plaintiff, through its representatives, together with representatives of the International Union and the Local Union entered into negotiations in collective bargaining after said certification by the National Labor Relations Board but said parties failed to reach an agreement with respect to wages, rates of pay and working conditions as respects the employees in the appropriate bargaining unit.

"10. On or about November 5, 1954 said International Union and Local Union, through their officers, agents and members, including, among others, the individual defendants, effected a strike against the plaintiff at all three of its plants and thereafter arranged for the picketing of these plants of the plaintiff in the City of Bridgeport.

"11. The individual defendants personally directed and actively participated in mass picketing at the entrances to the various plants of the plaintiff during the normal hours of plant op-

erations on November 8 and succeeding days when such plants under normal conditions would have been operating.

"12. The mass picketing directed by the International Union and the Local Union and the individual defendants herein named at the entrances to the various plants of the plaintiff involved the congregation of excessively large numbers of persons exceeding at times several hundred people milling around in close formation so as to prevent the entrance of any person to the plaintiff's plants.

"13. The International Union and the Local Union have declared to plaintiff's representatives it to be their avowed purpose, through their officers, agents, representatives, and members, to close down all plant operations and exclude not only employees in the unit whom they represent but also 600 or more other persons who constitute plaintiff personnel not represented by either union, as well as those persons required and charged with the responsibility of the physical maintenance of buildings, equipment, and facilities and such other persons, not employees, as may have occasion to do business with the plaintiff.

"14. Such mass picketing as is being conducted by the Local Union and the International Union through their members causes obstructions to the various entrances to the plaintiff's premises in a manner and to an extent that it is impossible for any person to enter the premises of the plaintiff without the use of force to push their way through the mass of individuals and thereby come in personal contact with the individuals massed as pickets, all of which is hazardous and will subject such persons seeking to enter the premises of the plaintiff to the danger of personal injury, violence and assault.

"15. The plaintiff, by reason of the conduct of the persons engaged in mass picketing, the threats of intimidation and violence and the risk of personal injury and harm to its employees not represented by the Union and to others who have occasion to enter its premises, has been compelled to discontinue any effort to operate its plant, including the shutting off of all heat, water, sprinkler systems and power, thereby creating serious hazards and risks of damage, fire, deterioration of plant properties and facilities, together with an incalculable loss to its business.

"16. The International Union and the Local Union, together with the individual defendants, have engaged and participated in the use of flying squads of pickets who approach entrances of the plants in large numbers running from various directions to congregate at such entrances whenever persons seek to enter the plaintiff's premises, and by such conduct, including shouting and threats of violence, intimidate persons lawfully and properly entitled to enter the plaintiff's premises and by the action of such flying squads are impelled, as a matter of personal safety, not to attempt to enter the plant.

"17. The defendant unions, through their officers, agents, and representatives, together with the individual defendants and in concert with other members of the Union, have threatened to continue the unlawful picketing hereinbefore mentioned so as to exclude forcibly, through mass formations, individual employees and others seeking to enter the premises of the plaintiff.

"18. The conduct of the defendants herein named and others in concert with them constitutes unlawful picketing which is causing irreparable damage to the plaintiff for which it has no adequate remedy at law.

"19. Plaintiff is suffering irreparable injury to the conduct of its business in that employees other than those represented by the unions and other persons appearing at its gates are impelled to refrain from entering the plant because the conduct of the persons participating in mass picketing induces fear of intimidation, violence and physical injury causing the discontinuance at this time of the conduct of the plaintiff's business including, among other things, the main-

tenance of its records, correspondence with other firms, persons, corporations with whom it does business, maintaining and disbursing payrolls not only for employees in the bargaining unit but also for all other employees at its Bridgeport plants, the administration of insurance programs for all of its employees and other necessary and proper functions in the maintenance of business and the protection and preservation of its property.

"20. All of the activities of the defendant unions and of the persons named individually as defendants are being carried out in an unlawful manner in defiance and derogation of the rights, privileges and immunities of the plaintiff in that such acts are accompanied by threats of intimidation and violence which interfere with the use, free and otherwise, of the plaintiff's property and the rights of individual employees and others to engage in gainful occupation and business transactions with the plaintiff, all of which are intended and directed to cause irreparable injury to the plaintiff.

"21. The plaintiff has suffered and will continue to suffer irreparable injury by the continuance of the acts of the defendants as herein set forth for which it has not adequate remedy at law.

"22. The plaintiff, notwithstanding the efforts and assistance rendered by the local police, has been unsuccessful in its endeavors to assist persons to obtain entrance to the plaintiff's premises without serious risk or danger of personal injury and violence.

"23. Plaintiff further alleges that unless a temporary injunction shall be issued substantial, real and irreparable injury will result to the plaintiff in that such real and irreparable injury far outweighs any consequence that may result from such issuance to the defendants in this proceeding.

"Wherefore the plaintiff prays:

"1. That a temporary injunction issue against the International Union, the Local union, the individual defendants personally and in their capacity as agents, representatives and members of the local Union or the International Union and persons acting in concert with or otherwise participating with them or acting in their aid or behalf, which shall enjoin, restrain and prohibit each and every one of them from

"(a) Congregating in large numbers by mass picketing or otherwise, upon the sidewalks or roadways in front of, near or around the plaintiff's premises in said City of Bridgeport and the various entrances thereto in such a manner or by any means to block or obstruct said entrance to said premises and prevent or interfere with entrance into and egress from said premises.

"(b) By force, violence or intimidation or threat or implication of force or violence or by the use of offensive language or otherwise, preventing or interfering with any person from entrance to or egress from said premises and place of business of the plaintiff.

"(c) Preventing or interfering in any way whatsoever with ingress to or egress from the plaintiff's business of trucks, vehicles, mail, merchandise, fuel or other materials destined to or from said premises.

"(d) Maintaining or allowing to remain at any entrance to the premises of the plaintiff a greater number of persons acting as pickets than the Court shall deem proper, or permitting said pickets to conduct themselves in a manner different than is permitted by law and is prescribed by order of the Court.

"2. That the plaintiff have all of the aforesaid relief pending the determination of this action and that thereafter a permanent injunction issue to the extent that the Court may deem necessary and appropriate in the protection of the rights of the plaintiff in and to its property and its interests.

"3. That the plaintiff have such other, further and different relief as to the Court may seem just and proper in the premises, including all costs incurred by the plaintiff in these proceedings.

"4. Damages of $500,000 for wilfull and malicious injury."

2. This court's order of December 23, 1954, 219 F.2d 99, on appellant's motion to stay the preliminary injunction pending appeal, reads, in part, as follows:

"After consideration of the oral arguments and briefs of the parties, we conclude that the injunctive order entered below is not effective to prevent the appellant during the pendency of the appeal and prior to final mandate thereon from seeking, or the State Court from granting, injunctive relief against activities 'which the National Labor Relations Board is without express power to prevent' or such injunctive relief, as may be provided by the law of the State to prevent 'mass picketing, threatening of employees, obstructing streets and highways, or picketing homes'—or any activity which threatens a 'probable breach of the state's peace or would call for extraordinary police measures by state by city authority', all within the meaning of Garner v. Teamsters Union, 346 U.S. 485, 488, 74 S.Ct. 161, 164, 98 L.Ed. 228. Understanding that the scope of the injunctive order below is so limited, it is ordered that the motion, in so far as it seeks complete suspension of the injunction pending appeal, be denied."