EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Marta Quiles Algarín<br><br>Peticionaria<br><br>v.<br><br>Asociación Bonafide ULEES,<br>Julio Pizarro<br><br>Recurridos | Certiorari<br><br>2018 TSPR 113<br><br>200 DPR ____ |

Número del Caso: CC-2016-454

Fecha: 18 de junio de 2018

Tribunal de Apelaciones:

   Región Judicial de San Juan

Abogado de la parte peticionaria:

   Lcdo. José Díaz Díaz

Abogados de la parte recurrida:

   Lcdo. Carlos Ortiz Velázquez
   Lcdo. Julio Marcano López

Materia: Procedimiento Civil: Alcance del término "disputa obrera" contenido en el Art. 249 del Código de Enjuiciamiento Civil, con el propósito de determinar su aplicabilidad en una orden protectora de embargo post sentencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marta Quiles Algarín

    Peticionaria

       v.

                      Núm. CC-2016-454    *Certiorari*

Asociación Bonafide ULEES,
Julio Pizarro

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 18 de junio de 2018.

En el presente caso nos corresponde delimitar el alcance del concepto *disputa obrera*, según dispuesto en el Art. 249 del Código de Enjuiciamiento Civil, *infra*, ello a los fines de determinar su aplicabilidad en una orden protectora de embargo por motivo de una sentencia en un caso de daños y perjuicios por libelo en contra de la Asociación Bonafide ULEES (en adelante "ULEES" o "la organización obrera"). Veamos.

I.

Allá para el año 2008, la señora Marta Quiles Algarín (en adelante, "señora Quiles Algarín") se desempeñaba como enfermera graduada en el Hospital Psiquiátrico Correccional del Centro Médico, adscrito

al Departamento de Corrección y Rehabilitación (en adelante, "Departamento de Corrección"). Allí, la parte recurrida, Asociación Bonafide ULEES,[1] publicaba un boletín informativo llamado *La Probatoria Nacional*, el cual se distribuía entre los empleados del Departamento de Corrección y sus dependencias, y en el cual se incluían artículos que narraban situaciones que ocurrían en el área de trabajo.

Durante el año 2008, el referido boletín informativo publicó una serie de artículos en los que se aludía directamente a la señora Quiles Algarín. En los mismos, alegadamente se hacían imputaciones sumamente negativas respecto al carácter de esta última.[2]

Enterada de ello, la señora Quiles Algarín presentó una demanda en daños y perjuicios en contra de la ULEES. En dicha demanda, adujo que durante el año 2008 la referida organización obrera publicó, en más de siete ediciones de su boletín informativo *La Probatoria Nacional*, información difamatoria y falsa en contra de su persona. Además, sostuvo que, en varias

---

[1] Unidad Laboral de Enfermeras(os) y Empleados de Salud.

[2] Entre las alegaciones hechas contra la señora Quiles Algarín en *La Probatoria Nacional*, se le imputó ser la directora de un grupo de enfermeras con "cargos misteriosos", para los cuales alegadamente no se abrieron convocatorias; se cuestionó cómo ésta obtuvo su clasificación como enfermera IV y se alegó que lo hizo de forma ilegal; se le catalogó como una "afrontá" y se indicó que ésta y el grupo de enfermeras bajo su supervisión no hacían los turnos de la tarde hasta que se aumentó el pago de los mismos; se le acusó de incautar medicamentos de pacientes hospitalizados durante sus turnos de supervisión; se le llamó abusadora; se le imputó tener una campaña de acoso y hostigamiento al personal de enfermería, entre otras imputaciones.

Estas acusaciones fueron planteadas en la relación de hechos de la petición de *certiorari* ante nuestra consideración. Véase *Certiorari*, págs. 2-4. Además, se encuentran en las transcripciones del contenido de los artículos incluidas en las páginas 20 a la 23 de la Sentencia del Tribunal de Apelaciones del 31 de marzo de 2014, KLAN201301624.

ocasiones, le solicitó a la ULEES que desistiera de su conducta, ya que ponía en riesgo su licencia de enfermera, pero dicha organización obrera hizo caso omiso a su petición. Oportunamente, la ULEES presentó su contestación a la demanda, donde, en esencia, negó las alegaciones en su contra.

Así las cosas, celebrado el juicio en su fondo, el 18 de julio de 2013, el Tribunal de Primera Instancia dictó *Sentencia* a favor de la señora Quiles Algarín. Al así hacerlo, el foro primario razonó que no existía controversia respecto a que la peticionaria no era una figura pública, que la publicación de los boletines en cuestión se hizo de forma negligente y que la información contenida en los mismos fue falsa y difamatoria, configurándose así todos los elementos de una causa de acción por libelo contra una persona privada. Por ello, ordenó a la ULEES a cesar y desistir de las publicaciones difamatorias en contra de la señora Quiles Algarín y a pagarle a ésta una indemnización de $35,000 por concepto de daños y perjuicios, más una suma de $3,500 por las costas, gastos y honorarios de abogado relacionados con el presente litigio.

Inconforme con dicho proceder, la ULEES acudió, por primera vez, al Tribunal de Apelaciones, arguyendo que las expresiones hechas en el referido boletín estaban cobijadas por la *National Labor Relations Act* (NLRA), *infra*, y, por tanto, para que prosperara su causa de acción en daños y perjuicios, la señora Quiles Algarín debía cumplir con el estándar aplicable a una contienda obrero-patronal, el cual requiere que el demandante pruebe que las manifestaciones

difamatorias fueron hechas con malicia real para poder tener disponibles los remedios de los tribunales estatales.[3] A dicha solicitud, la señora Quiles Algarín se opuso.

Evaluados los alegatos de las partes, el Tribunal de Apelaciones confirmó la *Sentencia* dictada por el foro primario.[4] Dicho dictamen fue oportunamente comunicado a ambas partes.

Insatisfecha con esa determinación, la organización obrera acudió ante este Tribunal mediante recurso de *certiorari*, en el cual, bajo los mismos fundamentos presentados ante el foro apelativo intermedio, solicitaba la revisión de la *Sentencia* emitida por dicho tribunal. Efectuado el análisis de rigor, el mencionado recurso fue denegado por este Foro.

Así pues, al advenir final y firme el anterior dictamen, mediante una *Solicitud de Orden al Amparo de la Regla 51.6 de Procedimiento Civil*, la señora Quiles Algarín solicitó al Tribunal de Primera Instancia la ejecución de la sentencia antes mencionada.[5] A tono con dicha petición, el foro primario

---

[3] *Linn v. United Plant Guard Workers of America, Local 114*, 383 US 53 (1966).

[4] A juicio de dicho foro, las manifestaciones en cuestión no se consideran una actividad concertada protegida. *Véase,* Sentencia del Tribunal de Apelaciones del 31 de marzo de 2014, KLAN201301624.

[5] En esta moción se le solicitó al tribunal que ordenara a la parte demandada a comparecer en las oficinas del abogado de la demandante, para que prestase declaración y que trajese consigo -- bajo apercibimiento de desacato o sanciones económicas -- ciertos documentos e información (número de seguro social, escrituras de las propiedades, copia de contratos de arrendamiento, números y cuentas de tarjetas de crédito, estados de cuenta, lista de todos sus bienes muebles e inmuebles, planillas, entre otros)relacionados a la ULEES. Apéndice del *certiorari*, págs. 15-16.

ordenó a la organización obrera a comparecer al tribunal y proveer la información solicitada sobre sus bienes.

Vista la orden del tribunal, la ULEES le solicitó al foro primario que emitiera una orden protectora, aduciendo que el Art. 249 del Código de Enjuiciamiento Civil, *infra*, en su inciso 13, y en pleitos como estos, le protege del embargo en ejecución de sentencia, por tratarse de una acción originada de una *disputa obrera*. Evaluada dicha solicitud, el Tribunal de Primera Instancia denegó la misma.

No conforme con dicho proceder, la ULEES recurrió al Tribunal de Apelaciones, mediante recurso de *certiorari*, en el cual solicitó la revisión de la determinación del foro primario, por entender que dicho tribunal erró al declarar *no ha lugar* su solicitud de orden protectora. A dicha solicitud, la señora Quiles Algarín también se opuso.

Evaluados los planteamientos de las partes, el foro apelativo intermedio emitió una *Sentencia*, en la cual revocó la determinación del Tribunal de Primera Instancia. Ello, tras concluir que la causa de acción en el presente caso surgió en el contexto de una *disputa obrera* y, por lo tanto, el Art. 249 del Código de Enjuiciamiento Civil, *infra*, impedía que se ordenara el embargo de los bienes de la ULEES.[6] Días más tarde, la señora Quiles Algarín solicitó a dicho foro la reconsideración de su determinación, la cual fue denegada.

---

[6] *Véase* Sentencia del Tribunal de Apelaciones del 25 de febrero de 2016, Apéndice del *certiorari*, págs. 2-14.

En desacuerdo con el antedicho dictamen, la señora Quiles Algarín recurrió ante nos mediante recurso de *certiorari*.[7] En síntesis, ésta aduce que el Tribunal de Apelaciones erró al extender la protección contenida en el Art. 249 del Código de Enjuiciamiento Civil, *infra*, a controversias como la que nos ocupa.

Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

De entrada, y para la correcta disposición de las controversias ante nuestra consideración, es menester dejar meridianamente claro que el Art. 249 del Código de Enjuiciamiento Civil, 32 LPRA sec. 1130, exime de ser objeto de embargo o ejecución a determinados fondos, bienes y propiedades que pertenezcan a una unión obrera. En particular, el inciso 13 de la referida disposición legal establece que **"estarán exentos de embargo y de órdenes de ejecución los fondos, bienes y propiedades de las organizaciones obreras cuando las órdenes de embargo o de ejecución se expidan en acciones que surjan con motivo, como consecuencia de, o en**

---

[7] Luego de presentado el recurso de *certiorari* por la señora Quiles Algarín, la ULEES compareció ante nos solicitando la desestimación del mismo por falta de jurisdicción, al alegadamente haberse presentado el mismo fuera del término jurisdiccional dispuesto para ello en el Reglamento de este Tribunal.

Examinada la moción de desestimación presentada por la organización obrera, este Tribunal emitió una *Resolución*, en la cual ordenó a la señora Quiles Algarín mostrar causa por la cual no debía desestimarse el recurso ante nuestra consideración. Oportunamente, la señora Quiles Algarín cumplió con lo ordenado.

Evaluados los planteamientos de ambas partes, ente Tribunal declaró no ha lugar la moción de desestimación y expidió el recurso que nos ocupa.

**relación con <u>disputas obreras</u>, paros o estados huelgarios".** (Énfasis suplido).

Sobre el contenido del mencionado Art. 249 del Código de Enjuiciamiento Civil, *supra*, y en particular respecto al alcance del concepto *disputa obrera* incluido en el mismo, es poco lo que se ha dicho por este Tribunal. Dicha disposición legal sólo ha sido discutida por este Foro, aunque en otro contexto, en *U.T.I.E.R. v. J.R.T.*, 99 DPR 512 (1970).

Allí -- al evaluar una controversia donde se argumentó que la Junta de Relaciones del Trabajo, en virtud de la precitada disposición del Código de Enjuiciamiento Civil, no tenía jurisdicción para ordenar a una unión a compensar al patrono por los daños causados como consecuencia de una huelga --[8] nos limitamos a señalar:

> Aparte del problema de la validez de una exención ilimitada como ésa, la cual no protege meramente las herramientas, útiles, equipo, morada, o una suma determinada, sino que incluye todos los fondos y propiedades de las organizaciones obreras, dicha disposición va dirigida contra reclamaciones privadas dilucidadas en los tribunales de justicia. *Íd.*, pág. 534.

Como se puede apreciar, lo dicho por este Tribunal en *U.T.I.E.R. v. J.R.T.*, *supra*, **"sobre [la aplicación del inciso 13 del Art. 249 del Código de Enjuiciamiento Civil] se limita a una expresión general sin ofrecerse un análisis para respaldar su determinación"**, D. Fernández y C. Romany, *Derecho Laboral: casos y materiales*, 1ra ed., Río Piedras, Ed. de la

---

[8] La controversia en este caso surgió de una disputa en la cual, a raíz de la suspensión de un empleado por haber agredido a un superior, la unión participó y respaldó un paro, violando cierta disposición del convenio colectivo que requería agotar los remedios provistos en el mismo para la solución de controversias.

U.P.R., 1987, T. II, pág. 1225, **que en nada aclara o delimita el alcance del término *disputa obrera*.** Nos corresponde, pues, en esta ocasión, atender ese vacío en nuestro ordenamiento jurídico.

### III.

Así las cosas, en vista de que no surge del propio estatuto objeto de estudio alguna definición del término *disputa obrera* que nos permita determinar si la controversia ante nos constituye un escenario en el cual es aplicable la disposición en cuestión, ni contamos con una expresión de la intención legislativa sobre este particular,[9] ante el vacío jurisprudencial al respecto, y en aras de delimitar correctamente el alcance del concepto *disputa obrera*, según contemplado en el Art. 249 del Código de Enjuiciamiento Civil, *supra*, resulta necesario -- en nuestro ejercicio de interpretación -- acudir a las definiciones provistas para dicho término en otras leyes que se refieren a la misma materia o cuyo objeto sea el mismo. Recordemos que, conforme a lo dispuesto en el Art. 18 del Código Civil de Puerto Rico, 31 LPRA sec. 18, "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro". *Véanse*, además, *Zambrana Maldonado v. E.L.A.*, 129

---

[9] El inciso 13 del Art. 249 del Código de Enjuiciamiento Civil, *supra*, fue introducido por la Ley Núm. 513 de 30 de abril de 1946, la cual no tiene exposición de motivos. Por otro lado, tampoco fue posible hallar, en el historial legislativo de la ley, alguna expresión que arrojara luz sobre la intención del legislador al añadir el referido inciso 13.

DPR 740 (1992); *Aponte v. Srio. de Hacienda*, 125 DPR 610 (1990); *Morales v. Adm. Sistemas de Retiro*, 123 DPR 589 (1989); *Riley v. Rodríguez Pacheco*, 124 DPR 733 (1989).

IV.

A tenor con lo antes establecido, dos son las leyes que, por tratarse de la misma materia bajo estudio, conviene repasar.

En primer lugar, resulta altamente ilustrativo lo dispuesto en la Ley de Relaciones del Trabajo, Ley Núm. 130 de 8 de mayo de 1945, 29 LPRA sec. 61 *et seq.* -- ley que regula las relaciones laborales y los asuntos sobre negociación colectiva en Puerto Rico --, la cual, en su Art. 2, define el término *disputa obrera* como "**cualquier controversia relativa a los términos, tenencia o condiciones de empleo** o en relación con la organización o representación de empleados o sobre negociación, fijación, mantenimiento, cambio o esfuerzo para convenir términos o condiciones de empleo, estén o no los disputantes en la relación inmediata de patrono y empleado". (Énfasis suplido) 29 LPRA sec. 63. Es decir, en esta ley se destaca que el término *disputa obrera* está comúnmente relacionado a controversias relacionadas con los *términos y condiciones de empleo*.

De otra parte -- y por, de igual forma, tratarse de una ley relacionada a la materia, toda vez que trata la jurisdicción de los tribunales en disputas obrero-patronales --, resulta pertinente estudiar lo dispuesto en la Ley Núm. 50 de 4 de agosto de 1947, 29 LPRA sec. 101 *et seq.*, también

conocida como la Ley de Injunctions en Disputas Obreras.[10] Al

respecto, dicha disposición legal, sobre el término *disputa*

*obrera*, establece en su Art. 9 lo siguiente:

> [e]l término 'disputa obrera' incluye **cualquier controversia relativa a término o condiciones de empleo** o relativa a la asociación o representación de personas al negociar, fijar, mantener, cambiar, o tratar de llegar a un acuerdo sobre términos o condiciones de empleo, aunque las partes se encuentren o no en la relación inmediata de patrono y empleado. (Énfasis suplido) 29 LPRA sec. 109.

Además de lo anterior, la mencionada disposición legal enumera

también una serie de circunstancias en las cuales se

considerará que un caso envuelve o surge de una *disputa*

*obrera*.[11]

---

[10] Esta ley establece que "[n]ingún tribunal de justicia de Puerto Rico tendrá jurisdicción para expedir orden alguna de entredicho o de injunction preliminar o permanente en un caso que envuelva o que surja de una disputa obrera, salvo de estricta conformidad con las disposiciones de este capítulo". 29 LPRA sec. 101.

[11] Según dispone este artículo:

> (a) Se considerará que un caso envuelve o surge de una disputa obrera cuando dicho caso envuelve a personas dedicadas a la misma industria, oficio, arte manual u ocupación; o que tienen interés directo o indirecto en los mismos; o que sean empleados del mismo patrono; o miembros de la misma organización de empleados o patronos, o de alguna organización afiliada a la misma; bien sea dicha disputa:
>
> (1) Entre uno o más patronos o asociaciones de patrono y uno o más empleados o asociaciones de empleados;
>
> (2) entre uno o más patronos o asociaciones de patronos y uno o más patronos o asociaciones de patronos, o
>
> (3) entre uno o más empleados o asociaciones de empleados y uno o más empleados o asociaciones de empleados; o cuando el caso envuelve cualesquiera intereses conflictivos o en pugna en una disputa obrera de personas participantes o interesadas en la misma.
> (b) Se considerará que una persona o asociación es participante o está interesada en una disputa obrera si se solicita recurso contra dicha persona o asociación, o si cualquiera de éstas se dedica a la misma industria, oficio, arte manual u ocupación en que ocurra dicha disputa, o tiene interés directo o indirecto en la misma, o es miembro, funcionario o agente de cualquier asociación

Como se puede apreciar, y cónsono con lo que señalamos en torno a lo dispuesto en la Ley de Relaciones del Trabajo, *supra*, la Ley de Injunctions en Disputas Obreras también relaciona el concepto *disputa obrera* con controversias sobre los *términos y condiciones de empleo*.

En el pasado, haciendo uso de las dos disposiciones legales antes mencionadas, en *Plan de Salud U.I.A. v. A.A.A.*, 169 DPR 603 (2006), resuelto mediante Sentencia, este Tribunal discutió con mayor detenimiento el alcance del concepto *disputa obrera*. Allí, la controversia versaba sobre un convenio colectivo en el cual las partes acordaron que la Autoridad de Acueductos y Alcantarillados (AAA) subsidiaría un plan médico para los empleados miembros de la Unión Independiente Auténtica (UIA). En medio de las negociaciones sobre las condiciones del nuevo convenio colectivo, la UIA decretó una huelga. Luego de varias semanas de huelga, las partes llegaron a ciertos acuerdos parciales, en los cuales la AAA se comprometió a reanudar sus aportaciones pendientes al plan médico. Sin embargo, la AAA no reinició el pago de las aportaciones acordadas.

En dicho caso, debíamos determinar a quién le correspondía atender la controversia referente al pago de las primas del seguro médico surgida entre el proveedor del plan, la AAA y la UIA.[12] Para dicho propósito, tuvimos que resolver

_____

compuesta total o parcialmente de patronos o empleados dedicados a tal industria, oficio, arte manual u ocupación. 29 LPRA sec. 109.

[12] El proveedor del plan contratado, Plan de Salud UIA, presentó una demanda y una solicitud de *injunction* contra la UIA y la AAA, reclamando

si el caso ante nuestra consideración constituía o surgía de una *disputa obrera*, pues de ello dependía la decisión sobre cuál foro estaba llamado a atender el mismo. Sobre el particular, señalamos en aquella ocasión que **"[l]o imprescindible para determinar si una controversia constituye o no una disputa obrero-patronal no es quién plantea el asunto, sino de dónde surgen los derechos reclamados"**. (Énfasis suplido) *Plan de Salud U.I.A. v. A.A.A.*, *supra*, pág. 613.

Siendo ello así, en ese caso determinamos que el derecho reclamado surgía "del convenio colectivo y los acuerdos pactados por las partes mientras negociaban un nuevo convenio colectivo" (Énfasis suplido), *Íd.*, por lo que le correspondía a la Junta de Relaciones del Trabajo, y no al Tribunal, atender en primera instancia la controversia. Tal razonamiento es cónsono con lo dispuesto en las leyes antes discutidas, las cuales, en esencia, definen *disputa obrera* como una controversia relacionada a los *términos o condiciones de empleo*.

Establecido lo anterior, es menester señalar aquí que cada una de las precitadas leyes locales tiene su origen en legislaciones laborales federales afines, donde también se define o se estudia el concepto *disputa obrera*. Por un lado, la Ley de Relaciones del Trabajo, *supra*, adoptó -- aunque con algunas diferencias en asuntos particulares -- el modelo de la

---

un dinero adeudado por concepto de primas de seguro médico. La AAA planteó que el asunto debía clasificarse como una práctica ilícita del trabajo, sobre la cual la Junta de Relaciones del Trabajo tenía jurisdicción primaria exclusiva. Por su parte, la aseguradora argumentó que no se trataba de una disputa obrero-patronal, sino de un incumplimiento contractual.

*National Labor Relations Act* (NLRA), Ley Púb. Núm. 198 de 5 de

julio de 1935 (49 Stat. 449), 29 USC sec. 151 *et seq.*, conocida

popularmente como la Ley Wagner. D. Fernández y C. Romany, *op

cit.*, T. I, pág. 39. La definición de *disputa obrera* que provee

la Ley de Relaciones del Trabajo es idéntica a la que contiene

esta ley federal.[13]

De otra parte, la Ley de Injunctions en Disputas Obreras,

*supra*, constituyó una adopción casi literal de la Ley Norris-

La Guardia de 1932, 29 USC sec. 101 *et seq. Véanse, Editorial

"El Imparcial, Inc." v. Brotherhood of Teamsters, Chauffeurs,

Warehousemen and Helpers, Local No. 901 et al.*, 82 DPR 164,

173 esc. 2 (1961); D. Fernández y C. Romany, *op cit.*, T. I,

pág. 42. Al igual que el resto de sus disposiciones, la

definición de *disputa obrera* que provee la Ley de Injunctions

en Disputas Obreras, *supra*, es también idéntica a la que

contiene su contraparte federal.[14]

---

[13] La *National Labor Relations Act* establece lo siguiente:

> The term **"labor dispute"** includes **any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee**. (Énfasis suplido) 29 USC sec. 152.

[14] La definición contenida en la Ley Norris-La Guardia, en lo pertinente al caso que nos ocupa, lee de la siguiente forma:

> (a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or

Siendo ello así, para una cabal comprensión de la controversia que nos ocupa, resulta conveniente, pues, analizar -- en detalle -- el trato jurisprudencial que en el ámbito federal se les ha dado a esas leyes y, en particular, al concepto *disputa obrera*.

V.

En esa dirección, conviene comenzar señalando que la NLRA y la Ley Norris-La Guardia son consideradas leyes análogas. Ello, toda vez que sus definiciones del término *disputa obrera* son prácticamente idénticas y los tribunales las han interpretado como consistentes entre sí. K. Griffith, *The NLRA Defamation Defense: Doomed Dinosaur or Diamond in the Rough?*, 59 Am. U. L. Rev. 1, 24-25 (2009). *Véanse*, además, *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n.*, 457 US 702, 711 esc. 11 (1982) ("[T]he definition of a 'labor dispute' in § 2(9) of the NLRA, 29 U.S.C. § 152(9), is

---

(3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

(c) **The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.** (Énfasis suplido) 29 USC sec. 113.

virtually identical to that in § 13(c) of the Norris-LaGuardia Act, 29 U.S.C. § 113(c), and the two provisions have been construed consistently with one another […]"); *U.S. v. Hutcheson*, 312 US 219, 234 esc. 4 (1941).

**En el contexto de las precitadas leyes, el Tribunal Supremo Federal ha señalado que, si bien la definición del término *disputa obrera* es sumamente abarcadora y no debe ser interpretada de forma restrictiva en el ámbito del derecho laboral**, *Burlington Northern R. Co. v. Brotherhood of Maintenance of Way Employees*, 481 US 429 (1987); *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n., supra*; *Sinclair Refining Co. v. Atkinson*, 370 US 195 (1962), **al examinar si una controversia constituye una *disputa obrera* según definida en las referidas leyes, se debe prestar particular atención a que la misma gire en torno a los *términos o condiciones de empleo*.** *Véanse, Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n., supra; Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co.*, 381 US 676 (1965); *Marine Cooks and Stewards, AFL v. Panama S. S. Co.*, 362 US 365 (1960); *Order of R. R. Telegraphers v. Chicago & N. W. R. Co.*, 362 US 330 (1960); *Bakery Sales Drivers Local Union No. 33 v. Wagshal*, 333 US 437 (1948); *Columbia River Packers Ass'n v. Hinton*, 315 US 143 (1942); *Milk Wagon Drivers' Union, Local No. 753, Int'l Bhd. of Teamsters, Chauffeurs, Stablemen & Helpers of Am. v. Lake Valley Farm Prod.*, 311 US 91 (1940). Al respecto, dicho foro ha expresado que "courts are themselves not without

experience in classifying bargaining subjects as terms or conditions of employment. Just such a determination must be frequently made when a court's jurisdiction to issue an injunction affecting a labor dispute is challenged under the Norris-LaGuardia Act […]." *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co.*, *supra*, pág. 686.

Por otro lado, el Tribunal Supremo federal ha reconocido también que, si bien la definición del concepto *disputa obrera* es amplia, ésta no se extiende a cualquier controversia que esté remotamente relacionada a algún entorno laboral. *Véanse, Bakery Sales Drivers Local Union No. 33 v. Wagshal*, *supra*; *Columbia River Packers Ass'n v. Hinton*, *supra*. Al respecto, en *Columbia River Packers Ass'n v. Hinton*, el Tribunal Supremo Federal expresó lo siguiente:

> We recognize that by the terms of the statute there may be a 'labor dispute' where the disputants do not stand in the proximate relation of employer and employee. But the statutory classification, however broad, of parties and circumstances to which a 'labor dispute' may relate does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing. *Íd.*, pág. 146.

Como se puede apreciar, de la anterior cita surge claramente que, aunque la definición reconoce que las partes no tienen que encontrarse necesariamente en una relación *inmediata* de patrono y empleado, la controversia debe surgir de dicha relación para que la misma pueda ser considerada propiamente una *disputa obrera*.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nos.

VI.

**Como hemos visto, al evaluar una controversia como la que hoy nos ocupa, es necesario tener en cuenta que, para que un acto pueda considerarse una *disputa obrera* al amparo del Art. 249 del Código de Enjuiciamiento Civil, *supra*, debe estar presente uno de dos requisitos, a saber: (1) que la controversia esté relacionada a los términos o condiciones del empleo; o (2) que los derechos reclamados surjan de la relación obrero-patronal.[15]**

**De otra parte, como ya mencionamos, el hecho de que la parte contra quien se reclama la compensación por daños sea una unión no convierte la controversia en una *disputa obrera* de forma automática. Ello pues, al determinar si una controversia constituye una disputa obrero-patronal, no debemos fijarnos en quién plantea el asunto, sino de dónde surgen los derechos reclamados.**

En lo que respecta al caso ante nos, como ha quedado claramente demostrado, la reclamación de la señora Quiles Algarín surge a consecuencia de los daños ocasionados por la ULEES, al publicar expresiones falsas y difamatorias sobre esta última de forma negligente. Las expresiones publicadas en el boletín *La Probatoria Nacional*, a grandes rasgos, le imputaban a la señora Quiles Algarín dirigir un grupo de

---

[15] Como, por ejemplo, derechos garantizados por un convenio colectivo o por algún otro tipo de acuerdo entre el patrono y la unión obrera.

enfermeras con "cargos misteriosos"; ser una "afrontá"; incautar medicamentos de pacientes hospitalizados durante sus turnos de supervisión; y tener una campaña de acoso y hostigamiento contra el personal de enfermería; entre otras imputaciones.[16] Dichas expresiones no iban dirigidas a hacer un reclamo legítimo al patrono dentro de la relación obrero-patronal o a hacer algún planteamiento relacionado a los *términos o condiciones del empleo*, como requiere la normativa antes expuesta, sino más bien constituían ataques personales contra la señora Quiles Algarín. Ataques como estos no se pueden considerar objeto de una *disputa obrera*.

Así las cosas, y no estando aquí presente ninguno de los dos elementos esenciales a considerar al momento de determinar si estamos o no ante una *disputa obrera* -- (1) que la controversia esté relacionada a los términos o condiciones del empleo; o (2) que los derechos reclamados surjan de la relación obrero-patronal --, resolvemos que la controversia ante nos, no constituye una *disputa obrera*, por lo que no le es aplicable lo dispuesto en el inciso 13 del Art. 249 del Código de Enjuiciamiento Civil, *supra*. Siendo ello así, se cometió el error señalado.

## VII.

Por los fundamentos antes expuestos, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso

---

[16] *Véanse, Certiorari*, págs. 2-4; Sentencia del Tribunal de Apelaciones del 31 de marzo de 2014, KLAN201301624, págs. 20-23.

al Tribunal de Primera Instancia para que proceda de conformidad con lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                                    Ángel Colón Pérez
                                     Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marta Quiles Algarín

    Peticionaria

        v.

Asociación Bonafide ULEES,
Julio Pizarro

    Recurridos

CC-2016-454       *Certiorari*

SENTENCIA

En San Juan, Puerto Rico, a 18 de junio de 2018.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la determinación del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo